# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

In re:                          )
                                    )
CITY OF PRICHARD, ALABAMA    )     **Bankruptcy Case No.: 09-15000**
                                    )     **Chapter 9 Proceeding**
           Debtor.             )

---

## THIRD AMENDED DISCLOSURE STATEMENT OF CITY OF PRICHARD

---

August 30, 2010

**Counsel for Debtor:**
Of Counsel:
R. Scott Williams
Latanishia D. Watters
HASKELL SLAUGHTER YOUNG & REDIKER, LLC
1400 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
Phone:  205.251.1000
Fax:  205.324.1133
rsw@hsy.com
ldw@hsy.com

C. Michael Smith
Suzanne Paul
Paul and Smith, P.C.
150 South Dearborn St.
Mobile, Alabama 36602
paulandsmithpc@earthlink.net

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

In re:                                    )
                                          )
CITY OF PRICHARD, ALABAMA                 )    **Bankruptcy Case No.: 09-15000**
                                          )    **Chapter 9 Proceeding**
            Debtor.                       )

---

## THIRD AMENDED DISCLOSURE STATEMENT
## OF CITY OF PRICHARD, ALABAMA

---

The City of Prichard, Alabama by and through its counsel, files this Third Amended Disclosure Statement ("Disclosure Statement") in support of the contemporaneously filed Second Amended Plan of Adjustment (the "Plan") pursuant to § 1125 of Chapter 11, Title 11 of the United States Code, 11 U.S.C. § 101, *et. seq.* (the "Bankruptcy Code").

Included in this Disclosure Statement is a Plan Summary which provides a significant amount of information regarding the implementation of the Plan. You are urged to read this Disclosure Statement in order to understand all of the operative terms and conditions and in order to have a fully informed vote on the Plan.

## CONCEPT OF THE DISCLOSURE STATEMENT
## AND PLAN OF ADJUSTMENT

This Disclosure Statement provides information in support of the orderly administration of the assets and the distribution of the available proceeds to holders of Allowed Claims contemplated by the Plan.

# ARTICLE I:  DEFINITIONS

The terms used herein shall have the meanings, unless the context clearly requires otherwise, of the definition provided for such terms in the contemporaneously filed Plan.

# ARTICLE II:  RULES OF INTERPRETATION;
## COMPUTATION OF TIME AND GOVERNING LAW

A.      **Rules of Interpretation.**

For purposes of this Disclosure Statement (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in this Disclosure Statement to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Disclosure Statement to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented from time to time pursuant to this Disclosure Statement; (d) unless otherwise specified herein, any reference to an entity as a holder of a Claim include that entity's successors, assigns and affiliates; (e) unless otherwise specified, all references in this Disclosure Statement to Articles and Sections are references to Articles and Sections of or to this Disclosure Statement; (f) unless otherwise specified, all references in this Disclosure Statement to Exhibits are references to Exhibits of or to the Plan; (g) the words "herein" or "hereto" refer to this Disclosure Statement in its entirety rather than to a particular portion of this Disclosure Statement; (h) captions and headings to Articles, Sections and Exhibits are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretations

of this Disclosure Statement; and (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

To the extent the Disclosure Statement and Plan are inconsistent, the terms of the Plan shall control.

### B. Computation of Time.

In computing any period of time prescribed or allowed by the Disclosure Statement or the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### C. Governing Law.

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release or other agreement or document entered into in connection with this Disclosure Statement, the rights and obligations arising under this Disclosure Statement shall be governed by, and construed and enforced in accordance with, the laws of the State of Alabama.

## ARTICLE III: DISCLAIMER

This Disclosure Statement is a solicitation of the Debtor only. It is not a solicitation of its attorneys, accountants, agents or servants, and representations made herein are those of the Debtor and not of the Debtor's attorneys, accountants, agents or servants, except as otherwise stated. The financial information contained herein has not been subject to an audit.

## IV: THE DEBTOR

The Debtor is an Alabama municipality which filed for protection under Chapter 9 of the Bankruptcy Code on October 27, 2009. The Chapter 9 case is currently pending before the

Honorable William S. Shulman, United States Bankruptcy Judge, Case No 09-15000. Since the Filing Date, the Debtor has continued to operate and provide city services.

### A.    Events Leading to Chapter 9 Filing

During the summer of 2009, the Debtor's faced increasing pressures regarding its operational budget and its pension reserves from which it paid its pension obligations to former employees. In the summer of 2009, the City took dramatic steps to reduce its operating budget to be able to provide basic city services without operating the City at a deficit. Contemporaneously, the City's pension obligations to its retirees were ongoing, but the remaining monies left in the dedicated pension were dramatically dwindling.

The City's pension fund has been under substantial fiscal pressure since the City's prior bankruptcy filing. As a part of the City's prior plan, retirees had previously agreed to modify their treatment. The treatment of retirees and the pension were memorialized in the City's published pension plan. The pension plan, arising from the prior bankruptcy, agreed to by the City and the retirees has been effective since January 1, 2002. This plan modified a prior pension plan that was established under certain local laws that allowed for the City to create a pension. In addition to the pension modifications, the earlier bankruptcy plan called for the City to provide for an infusion of sixteen million dollars into the pension fund. As of the Petition Date, the City's fiscal resources have not allowed for it to make this contemplated infusion.

The City's current projected monthly obligation to satisfy all its current retiree pension obligations is approximately $148,500.00. This figure projected on an annual basis is currently $1,782,000.00. This figure does not, however, include non-vested employee withdrawals which are also obligation of the pension fund. In contrast, as part of the City's proposed Plan, the

retirees monthly obligation is projected to be approximately $30,000.00 monthly and an annual expense of $360,000.00.

Last fall, the City took steps to authorize the mayor to take a series of actions to protect the City's interests in the shadow of a severe financial crisis. Specifically, the City became unable to meet its monthly pension obligations to its retirees in September 2009. Litigation by certain retirees was instituted and lawsuits were brought to bring focus to the problem of the under-funded pension obligations of the City.

Pursuant to the City Counsel's prior authorization, the Mayor authorized the filing of the pending Chapter 9 proceeding on October 27, 2009. The Mayor's stated objective is to both address the outstanding operational issues and the City's under-funded pension obligations.

### B.     Events Arising Subsequent to the Petition Date

After the filing of the petition, by and through counsel, the City took necessary steps to effectuate a smooth transition and operation under Chapter 9 of the Bankruptcy Code. Various typical pleadings were filed and ruled upon which provided for the City's ongoing operations. In addition, the City successfully objected to a relief from stay motion filed by certain of the City's pensioners who sought continue their ongoing litigation regarding the City's under-funded pension obligation.

As part of the City's post-petition operations, it has made payments to its "ordinary course" vendors. These payments include some pre-petition obligations of the City. It should be noted, however, that a vast majority of these obligations fall into two categories. First, the payroll and related benefits arising pre-petition were paid by the City post-petition. Second, the City paid pre-petition bills pursuant to ongoing contracts, leases, or necessary city functions. Included in this second category of payments were disbursements for insurance, utilities, garbage

service, equipment leases and taxes. The City has reviewed these payments and does not believe that any material payments were made outside these categories.

In addition, Counsel believe that there are no avoidable transfers pursuant to § 549 of the Bankruptcy Code. In order to make a recovery under this section, the City would be compelled to prove that its actions were not authorized. In short, the contrary is true because all of the post-petition transfers were made pursuant to the City's budget and were authorized by local law. Moreover, the Court is barred, pursuant to § 904 and absent consent, from interfering with "any of the property or revenues of the debtor." In summary, the City made decisions regarding its property to protect the "ordinary course" operations of the City and in compliance with applicable law.

Since the filing, a Creditor Committee was appointed and counsel was appointed to represent unsecured creditors' interest. After argument and pleadings, the Court authorized the appointment of counsel, but supported the Debtor's position that it is not obligated to pay for the professional fees of the committee. Subsequently, the Court has ordered the dismissal of counsel and the dissolution of the Creditor Committee.

Through the spring of 2010, the City has worked aggressively to identify its assets and create a realistic budget which provides minimal basic city services. Unfortunately, the City has been unable to resume its ordinary pension payments to its existing pension holders. By and through the contemporaneous Plan of Adjustment, the City will seek to modify certain of its obligations and to provide a mechanism to continue to provide city services to the City's residents and businesses.

## ARTICLE V: EXISTING ASSETS AND REMAINING
## OPERATING ADMINISTRATIVE EXPENSES

Currently, the Debtor continues to operate as a municipality on behalf of its citizens and claimants.

**A    Current Budget**

Recently the City adopted a prudent budget for fiscal year 2010. It should be noted that the City's current budget reflects a decrease of 18.54% from the prior year's operating budget.

The City's current budget is believed to be both prudent and provide a balanced approach to meeting the City's ongoing obligations to provide services to its citizens. The budget represents both revenues and expenditures that are reasonable and necessary for the functions of the City. An expanded summary of that budget is attached as Exhibit A-1. Moreover, the City's complete budget is a public record and is available for review at the City's offices. Additionally, attached as Exhibit A-2 is a summary of the latest monthly financial report, prepared by the City's finance department for July, 2010. A complete copy of this report with all attachments is available for review at the City's offices.

The City believes that this budget is substantially similar to future budgets that will likely be enacted in the following years as provided for under the Plan. The City does not anticipate either significant revenues or expenditures which would substantially alter this plan and provide for additional resources to pay its creditors. As such, the City believes that the Plan will necessarily be driven by the City resources available in the future and this budget represents a fair and accurate representation of those future City resources.

The City has entered into a development agreement for the building of a racetrack. That development has been pending for over four years and it is highly speculative as to whether this

project will ever come to fruition.  Under the development agreement, the City would receive annual payments of approximately two million dollars.  In the event this project becomes a reality, the expenses that would be incurred by the City by the existence of the track have not and cannot be fully calculated at this time.  Given the speculative nature of this project and the uncertainty of future expenses, the City's budget and proposed plan do not reflect this potential future revenue.  In the event the City does receive funds from this project in the future, the City reserves the right to use these funds in it's discretion.

**B.      Pension Assets**

As of June 30, 2010, there was $502,557.73in the dedicated pension fund.  These funds represent monies paid in by both current employees and by the City.

Of the monies in the dedicated fund, $155,061.16 are the monies that have been withheld from the wages of the City's existing employees since the filing of the petition.  Under the terms of the Plan, such funds, withheld from current employees, will be placed in a separate account for the benefit of the City's current employees and the City's obligations to provide retirement benefits to those employees

**C.      Other Assets**

The City has existing assets and may acquire surplus assets in the future.  Attached hereto as Exhibit B is the most up-to-date draft of the City's audited financial report reflecting the City's financial condition as of September 30, 2009.

In particular, the City currently has a municipal golf course.  The City intends to market and hopefully sell this golf course to a third party who will be able to provide upkeep maintenance and provide for the ongoing operation of the golf course.  The City is uncertain as to when and how any disposition of this property will take place.  It should be noted that the

City's golf course is encumbered and as a result, the City believes little, if any, funds will be available from the future disposition and sale of the City's golf course. If such funds were to become available, these funds would be used to provide for ongoing city services.

### D.     City Governance

The City operates, pursuant to applicable law, in a Mayor-Council form of government. The current mayor is Ron Davis. The current City Council members are Napolean Bracy (president), Herman Towner, Earline Martin-Harris, Troy Ephraim and Ossia Edwards. The City anticipates these individuals to continue in office subsequent to the Effective Date of the Plan, and may be replaced as provided for under applicable law.


### ARTICLE VI: PLAN SUMMARY

The Plan is premised on the necessity to continue to provide essential city services to the residents of the City, the Debtor

### A.     Means of Implementation

1.     In General.

The Plan provides a mechanism to pay for ongoing city services and to allow for the partial payment of pre-petition obligations.

2.     Classification of Claims. The following table depicts the classification of Claims against the Debtor:

| Class I | Administrative Claims |
|---------|----------------------|
| Class II | Priority Tax Claims |
| Class III | Secured Claim of Commonwealth National Bank |
| Class IV | Secured claim of G.E. Capital |

| | |
|---|---|
| Class V | Secured Claim of Regions Bank |
| Class VI | Claims of, South Alabama Regional Planning Commission and Mobile County Emergency Management Agency |
| Class VII | Ordinary Course of Business Claims |
| Class VIII | Ordinary Course of Insured Claims |
| Class IX | Current Employee Pension Claims |
| Class X | Retired Employee Pension Claims |
| Class XI | Non-ordinary Course of Business Claims |

3.     <u>Treatment of Classes</u>

    <u>Class I: Administrative Claims.</u> This class consists of claims arising pursuant to Section 503 of the Code. As of today's date, the Debtor is current on all of its post-petition obligations arising in its ordinary course of business. Certain professionals engaged by the Debtor for non-bankruptcy related services shall be timely paid. Bankruptcy Counsel for the Debtor as of July 30, 2010 has an accrued balance due and owing of fees of approximately $88,000.00. The Bankruptcy Counsel has been paid $28,000.00 that has been applied to prior invoices.

Class I is unimpaired.

    <u>Class II: Priority Tax Claims.</u> This class consists of tax claims owed to the Internal Revenue Service ("IRS") and the Alabama State Department of Revenue (the "Alabama Revenue Department"). On the petition date, the Debtor had some outstanding tax claims owed to the IRS and the Revenue Department.

Subsequently, the Debtor believes it has paid in full the claims of the IRS and the Alabama Revenue Department and to the Debtor's knowledge is current on all existing tax obligations. The Alabama Department of Industrial Relations filed a claim which the Debtor has paid in the ordinary course of business. The Debtor has filed an objection to this claim which the Court sustained and the claim is disallowed.

Additionally, the IRS has filed a claim for approximately $10,000.00 for taxes, penalties and interest arising from FICA taxes. The City disputes this Claim. If the City files an objection to the claim, then upon entry of a final nonappealable order resolving such claim, if the claim is sustained in whole or in part, the City shall pay such claim in full within ninety days of the entry of such an order. In the event the City elects not to object to the claim, then the claim will be paid in full within ninety days of the date on which the Confirmation Order becomes final and nonappealable. Any post-petition liabilities owed to the United States will be paid in full on the later of the effective date of the plan or the date required under applicable federal law.

Class II is unimpaired.

Class III: Secured Claim of Commonwealth National Bank. This Class consists the secured claim of Commonwealth National Bank in the amount of $210,000.00. The Claimant holds a Mortgage on certain real property of the Debtor. The Note secured by the Mortgage requires "interest only" payments on a quarterly basis and provides that the outstanding principal and interest will become due in full in October, 2010. The City has made the interest payments which have become due since the filing of the petition and the obligation is not in default. The City and the Claimant have agreed to an amortization of this obligation which

will allow the City to liquidate the Claim and avoid the City facing potentially another financial crisis in October 2010.

The $210,000.00 principal amount of the loan will be amortized over a period of ten years at an interest rate of 7.5% per annum, with payments in the amount of $2,492.00 per month, with the first monthly payment coming due in October, 2010. After the City has made 60 monthly payments, the remaining amount due shall become payable in full. The Claimant shall retain its mortgage on the property it currently holds until the Claim is paid in full. The identity and the address of the organization in this class is attached as Exhibit C-1.

Class III is impaired.

Class IV: Secured Claim of G.E. Capital. This class consists to the secured claim of G.E. Capital which holds a security interest in a Toro mower. The debt, as of the Petition Date was approximately $10,000.00 and was not in default. Upon confirmation the Claimant's contractual rights will be reinstated and the allowed claim paid per the terms of the contract.

Class IV is unimpaired.

Class V: Secured Claim of Regions Bank. This class consists to the Allowed Secured claim of Regions Bank which claims a security interest in certain equipment related to a paint booth down draft system. The claim is estimated to be $120,000.00 and is not in default. Upon confirmation the contractual rights of the Claimant will be reinstated and the claim paid pursuant to the contract terms.

Class V is unimpaired.

<u>Class VI: Claims of South Alabama Regional Planning Commission and Mobile County Emergency Management Agency</u>:

This class consists of the claims of the South Alabama Regional Planning Commission and the Mobile County Emergency Management Agency. These are member organizations that the City belongs to as part of its participation in regional functions. With respect to the City's obligations to each of these organizations, not withstanding any earlier statement of propose plan treatments, the City assumes the agreements and future obligations to each of the organizations. Further, the City and these organizations agree that the City will fully budget and pay its apportioned share and obligation to these entities beginning in the next fiscal year and for each year thereafter for the life of this plan. The City believes that these combined obligations to be for approximately $85,000.00 annually. The City and organizations further agree that any deficiency or amount currently owed by the City will be satisfied by the filing of a claim and agreement that such claim shall participated as a Class XI claim. The identity and address of the organizations in this class is attached as Exhibit C-2.

Class VI is impaired.

<u>Class VII: Ordinary Course of Business Claims.</u> At the time of the filing of the Petition, the Debtor had certain ordinary course of business claims related to its pre-petition operations. The Debtor believes that it has paid all of such claims and is current on all such obligations. The Debtor proposes to continue to pay such ordinary course of business obligations prior to and subsequent to the Effective Date.

The Ordinary Course of Business claims are unimpaired.

<u>Class VIII: Ordinary Course Insured Claims.</u> Prior to the Petition Date, the Debtor had certain claims against it for which the Debtor had insurance coverage. This insurance coverage

covered both the costs of defense and in some cases liability. During the pendency of the bankruptcy, the Debtor has entered into agreements with some of these claimants.

The Debtor proposes that claims for which liability coverage is provided be limited in their recovery to only those insurance proceeds that may be provided pursuant to the Debtor's insurance policies and that such claims shall be barred from any further or additional recovery against the Debtor. The identity and address of the person or persons identified in this class is attached hereto as Exhibit C-3.

Class VIII claims are impaired.

Class IX:  Current Employee Pension Claims.  This class shall consist of the claims of the current employees of the City for contributions made to the City's existing Pension Plan. The City withholds 5.5 percent of each employee's wages each payroll period as each employee's contribution to the existing pension plan. Upon the Effective Date the existing pension plan shall cease for all current employees. A new pension plan for the current employees will be established. The new employee plan will be funded from three sources. First, the 5.5 percent of wages currently being withheld will be paid to into the new plan. Second, the Debtor shall transfer the funds withheld since the Petition Date from current employee wages and paid into the existing pension plan and shall pay such funds into the new plan. Third, the Excess Retirement Funds, if any, as they are identified below in Class X, shall be paid into the new plan attached hereto as Exhibit D is a summary of the proposed plan and information regarding the proposed administrator of that new plan.

The identity and address of the persons identified in this class is attached hereto as Exhibit C-4.

Class IX claims are impaired.

<u>Class X: Retired Employee Pension Claims.</u> The City will make distributions to the class of existing pension claims as follows:

The City estimates that approximately $347,000.00 will remain in the existing fund after the withdrawal of the existing employee contributions. On the Effective Date the City will distribute all of these funds, less a $100,000.00 cushion, to this class on a pro rata basis and based upon the existing unpaid pension obligations as of the Effective Date.

After the Effective Date, the City will continue to set aside 10.5% of each payroll. Under the current budget this is approximately $27,500.00 a month. Also, there are approximately 157 retirees participating as a vested pensioners under the existing pension plan. For a period of ten (10) years, the City will pay to each claimant in this class their pension obligation up to a maximum of $200.00 per month per claim. Currently, certain retirees' monthly pension payment is for less than $200.00/month. For these retirees, the Plan provides for a full payment of the monthly obligation during the period for which retiree payments are made under this Plan

In the event there are excess funds set aside from the payroll that are more than is necessary to make the monthly payments, these will be deemed Excess Retirement Funds ("Excess Retirement Funds") The Excess Retirement Funds will be treated as set forth in the description of Class IX claims.

The $100,000.00 cushion will be managed funds held for the benefit of Class X claims. These cushion funds will be used to supplement the monthly payments to the extent the payroll deduction is ever insufficient to fund the monthly payment described above. On the ten year anniversary and termination of the existing plan there shall be a final distribution. The final distribution shall be to all remaining Class X claimants of the remaining funds. The final

distribution shall be on a pro rata basis based upon the accrued but unpaid pension obligation of Class X claimants.

The right of Claimants in this Class to monthly payments as set forth herein shall terminate on the death of the Claimant or the death of the Claimant's surviving spouse, whichever occurs last. The Claimant's estate or surviving spouse shall retain the right to a pro rata payment upon the final distribution as set forth in the preceding paragraph. The amount of such deceased Claimant's claim shall be the accrued but unpaid pension obligation as of the date of death.

The identity and address of the person or persons identified in this class is attached hereto as Exhibit C-5.

The Retired Employee Pensions Claims are impaired

Class XI:  Non-ordinary Course of Business Claims.  This class shall consist of all other allowed unsecured claims against the Debtor. The Debtor will make an annual payment of $50,000.00 to be distributed pro rata to this class. The initial payment shall be made 180 days after the Effective Date. The payments shall be made annually for a period of five years. This class shall include claims of former employees who have claims against the existing Pension Plan, but are not vested in such plan. These employees, in order to receive a distribution under the Plan, must file a claim prior to the Bar Date. This class also includes the claim of Yvonne M. Baldwin. Ms. Baldwin's claim was originally filed as secured, but pursuant to the Court's prior order, shall be treated as unsecured. The identity and address of the person or persons identified in this class is attached hereto as Exhibit C-6.

4.    No Accrual of Postpetition Interest for Unsecured Claimants  Except as otherwise provided in the Plan, no Claimant of an Unsecured Claim shall be entitled to the accrual of

postpetition interest or the payment by the Debtor or the Debtor or their successor of postpetition interest on account of such Claim for any purposes.

Except as otherwise provided in this Plan, no Claimant of an Unsecured Claim shall be entitled to the accrual of postpetition interest or the payment by the Debtor or the Debtor or their successors of postpetition interest on account of such Claim for any purpose.

5.  Reservation of Right to Confirm Plan Through a Cram-Down

Notwithstanding the rejection or deemed rejection of this Plan by any Class of Claims or Equity Interests, the Debtor reserves the right to confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, the cram-down provision.

6.  Funding of Plan  The Plan will be funded by cash deposits or based on the future revenues of the City.

7.  Distributions under the Plan

(a)  Means of Payment.

Any payment of cash made under the Plan may be made by either check or by wire transfer. The Debtor shall be entitled to deduct any federal, state or local withholding taxes from any payments under this Plan. As a condition to making any distribution under this Plan, the Debtor may require that the holder of any Allowed Claim provide such holder's taxpayer identification number and such other certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

(b)  De Minimis Distributions.

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent. No interim Distribution will be made on account of any Allowed Claim if the amount of such Distribution

is less that $5.00. One the Final Distribution Date, the Debtor shall (i) aggregate the amount of all Distributions that would have been made on account of an Allowed Claim but for this de minimis provision and (ii) make a Distribution on account of such Allowed Claim in accordance with the Plan. If a distribution of less than $5.00 (unless such distribution would result in such Claimant being paid in full) is to be made under this Plan, then the holder of the Allowed Claim with respect to which such distribution is to be made shall receive no distribution, but the funds that would have been distributed to such Claimant shall be held by the Debtor in trust for such Claimant until the next Interim Distribution or the Final Distribution, as the case may be, and such withheld distribution shall be aggregated with such next Interim or Final Distribution when determining the amount to be distributed to such Claimant and whether such distribution is *de minimis*, as provided in this Section.

(c)     Addresses.

Except as otherwise provided herein, distributions to Claimants of Allowed Claims shall be made: (a) at the addresses set forth on the respective proofs of Claim Filed by such Claimants; (b) at the addresses set forth in any written notices of address change delivered to the Debtor after the date of the Filing of any related proof of Claim; or (c) at the addressed reflected in the Schedules or the exhibits attached to this Disclosure Statement.

(d)     Undeliverable Distributions.

(i)     If any Claimant's distribution is returned to the Debtor as undeliverable, no further distribution will be made to such Claimant unless the Debtor is notified in writing of such Claimant's then current address. Undeliverable distributions will remain in the possession of the Debtor until such time as the distribution becomes deliverable.

Undeliverable cash will be held in trust for the benefit of potential Claimants of such cash, subject to ultimate distribution in accordance with subsection (ii) below.

(ii)     Any Claimant of an Allowed Claim who does not assert a right to an undeliverable distribution within six (6) months after any given Distribution or the Final Distribution, as the case may be, will be forever barred from asserting its Claim related to such undeliverable distribution against the Debtor or the Debtor, and such undeliverable distribution shall become available for further distribution in accordance with this Plan. Nothing contained in this Plan shall require the Debtor to attempt to locate any Claimant of an Allowed Claim.

(e)     Compliance with Tax Requirements.

(i)     In connection with this Plan, to the extent applicable, the Debtor shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements, and the Debtor shall be authorized to pay excise or other employer-related taxes. The Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

(ii)     Notwithstanding any other provision of this Plan, each entity receiving a distribution of cash pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of any such distribution.

(f)     Disputed Claims.

On the Confirmation Date there may exist Claims that are disputed. Within the latter of sixty (60) days after the Confirmation Date, or sixty (60) days after the Filing of a proof of Claim, only the Debtor shall be permitted to file an objection to the allowance of any Claim, and

shall prosecute the objection to completion. A Claim which is not an Allowed Claim as of the Confirmation Date, but which becomes an Allowed Claim subsequent to the Confirmation Date will be treated in accordance with this provisions of this Plan. All Disputed Claims which become Allowed Claims will receive their initial distribution on the latter of (i) the first Distribution date, or (ii) the date which the Order allowing their Claim becomes a Final Order.

Property to be distributed under this Plan on account of Claims that are not Allowed Claims as of the Effective Date shall be held in a separately designated account, pending the allowance or disallowance of the Claim. Payments and distributions to holders of Disputed Claims, to the extent such Claims ultimately become Allowed Claims, will be made from the separately designated account in accordance with this Plan. If any funds remain in the separately designated account after resolution of all objections to the Disputed Claims, such remaining funds shall be distributed in accordance with this Plan.

To the extent that the Debtor has filed a motion to subordinate Claims or any other suit, any distribution that would otherwise be distributable to the respondents or defendants of such motion or suit shall be withheld from distribution in the specially designated account until resolution of such motion, and the right thereto shall be determined by the Court. If the Court determines that such Claims shall be subordinated and such determination becomes a Final Order, the distributions withheld shall be distributed pursuant to this Plan.

(g)     Executory Contracts and Unexpired Leases.

On the Confirmation Date, the Debtor will be deemed to have accepted all executory contracts and unexpired leases not otherwise addressed. The Debtor has and shall explicitly reject all contracts related and arising out of its existing pension plan.

(h)     Conditions and Confirmation.

Except as expressly waived in writing by the Debtor upon written notice filed with the Bankruptcy Court, the following conditions must occur and be satisfied on or before the Effective Date for the Plan to be effective:

1.      The Confirmation Order approving all of the terms and provisions of the Plan shall have been signed by the Bankruptcy Court and duly entered on the docket for the case by the clerk of the Bankruptcy Court.

2.      There shall not be any stay in effect with respect to the Confirmation Order.

3.      The Confirmation Order shall be a Final Order.

(i)     Indemnification Obligations.

For purposes of the Plan, the obligations of the Debtor to defend, indemnify, reimburse or limit the liability of any current and former officers or employees (in their capacity as such) who were officers or employees, respectively, before, on or after the Petition Date against any claims or obligations pursuant to applicable state or federal law or any specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged irrespective of whether indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before, on or after the Confirmation Date.

(j)     Modification of Plan.

Subject to the restrictions on modifications set forth in section 942 and 1127(d) of the Bankruptcy Code, the Debtor reserves the right to alter, amend or modify this Plan before its substantial consummation with leave of Court. After the Confirmation Date, the Debtor may,

with approval of the Court, and so long as it does not materially or adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies in this Plan, or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of this Plan.

(k)     Revocation of this Plan.

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date.  If the Debtor revokes or withdraws this Plan, or if Confirmation does not occur, then this Plan shall be null and void in all respects, and nothing contained in this Plan shall: (a) constitute a waiver or release of any claims by or against the Debtor; (b) prejudice in any manner the rights of the Debtor, the Debtor; (c) constitute an admission by the Debtor of any statements made in this Plan or the Disclosure Statement; or (d) constitute an agreement of the Debtor to be bound by the terms and conditions set forth in this Plan.

**B.     Severability of Plan Provisions**.

If, prior to the Confirmation, any term or provision of this Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## ARTICLE VII: CONFIRMATION OF THE PLAN

**A      Procedures.**

Holders of claims should carefully read the instructions contained on the ballot, complete, date and sign the ballot and transmit it to the address indicated on the ballot. In order for a vote to be counted, the ballot must be received at the address identified on the ballot not later than the date set by the Court. A class of impaired claims will have to accept the plan by creditors holding two-thirds in amount and more than one-half in number of the allowed claims of such class.

A ballot to be used for voting to accept or reject the Plan is enclosed with all copies of this Disclosure Statement and mailed to creditors entitled to vote. BEFORE COMPLETING YOUR BALLOT, PLEASE READ CAREFULLY ANY MATERIALS AND INSTRUCTIONS THAT MAY ACCOMPANY THE BALLOT.

**B.      Hearing on the Confirmation.**

A hearing on the adequacy of the Disclosure Statement and the Plan will be held on a date set by the Court.

The City believes that certain creditors are entitled to vote on the Plan. Specifically, the City believes that Claimants under Classes III, VI, VIII, IX, X and XI are entitled to vote. A ballot to assume or reject proposed treatment under the plan shall be provided to each of the Claimants in the Plan. The list of those receiving ballots are those that are attached in the Exhibits to this Disclosure Statement.

### C. Consequences of Failure to Confirm Plan.

In the event the requirements for confirmation of the Plan are not satisfied, the Debtor reserves the right and the opportunity to seek the confirmation notwithstanding an adverse vote in any class of claimants, or to amend the Plan to remedy any deficiency or submit a new plan.

### ARTICLE VIII: TAX ASPECTS OF DISTRIBUTION UNDER THE PLAN

The Debtor believes that under present laws and regulations there should be no adverse federal income tax consequences affecting the reorganized Debtor arising from the confirmation and performance of the Plan or in connection with the distribution to creditors and interest holders provided by the Plan and other consequences normally related to payment, partial payment, or forgiveness of an obligation by a debtor to a creditor.

THE FOREGOING DESCRIPTION OF FEDERAL INCOME TAX CONSEQUENCES CONCERNS ONLY THE TAX CONSEQUENCES UPON THE DEBTOR AND IS INTENDED MERELY AS AN AID FOR CREDITORS, AND NEITHER THE DEBTOR NOR ITS COUNSEL PROPOSES TO OFFER TAX ADVICE HEREBY TO CREDITORS CONCERNING THE TAX RAMIFICATIONS OF THIS PLAN UPON CREDITORS. THE DEBTOR AND ITS ATTORNEYS DISCLAIM ANY LIABILITY OR RESPONSIBILITY TO CREDITORS REGARDING THEIR OWN TAX MATTERS AND CREDITORS AND INTEREST HOLDERS ARE URGED TO OBTAIN ADVICE FROM THEIR COUNSEL OR ADVISOR REGARDING THE APPLICABILITY OF FEDERAL AND STATE TAX LAWS.

Respectfully submitted this 30th day of August, 2010.

_____
R. Scott Williams
Latanishia D. Watters
Counsel for the City of Prichard, Alabama

**Of Counsel:**
R. Scott Williams
Latanishia D. Watters
HASKELL SLAUGHTER YOUNG & REDIKER, LLC
1400 Park Place Tower
2001 Park Place North
Birmingham, Alabama 35203
Phone: 205.251.1000
Fax: 205.324.1133
rsw@hsy.com
ldw@hsy.com


C. Michael Smith
Suzanne Paul
Paul and Smith, P.C.
150 South Dearborn St.
Mobile, Alabama 36602
paulandsmithpc@earthlink.net

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading was electronically served this the 30th day of August, 2010 in accordance with the method established under this Court's CM/ECF Administrative Procedures upon all parties in the electronic filing system in this case or by placing a copy of same in the United States Mail postage prepaid and properly addressed as follows:

Robert J. Hedge
Miller & Hedge, P.C.
P.O. Box 2232
Mobile, Alabama 36652

Lawrence B. Voit
Alexander K. Garrett
Silver, Voit & Thompson
4317-A Midmost Drive
Mobile, Alabama 36609

Travis M. Bedsole, Jr.,
Bankruptcy Administrator
P.O. Box 3083
Mobile, Alabama 36652-3083

_____
Of Counsel

3858269_1