IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

In re:                                          )
                                                )
CITY OF PRICHARD, ALABAMA       )        **Bankruptcy Case No.: 09-15000**
                                                )        **Chapter 9 Proceeding**
              Debtor.                       )

---

## SIXTH AMENDED DISCLOSURE STATEMENT OF CITY OF PRICHARD

---

January 24, 2014

**Counsel for Debtor:**
Of Counsel:
R. Scott Williams
Jennifer B. Kimble
RUMBERGER KIRK & CALDWELL
Lakeshore Park Plaza, Suite 125
2204 Lakeshore Drive
Birmingham, Alabama 35209-6739
Phone:  205-327-5550
Fax:  205-326-6786
swilliams@rumberger.com
jkimble@rumberger.com

C. Michael Smith
Suzanne Paul
Paul and Smith, P.C.
150 South Dearborn St.
Mobile, Alabama 36602
Phone:  251.433.0588
Fax:  251.433.0594
paulandsmithpc@earthlink.net

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

In re:                                    )
                                          )
CITY OF PRICHARD, ALABAMA                 )        Bankruptcy Case No.: 09-15000
                                          )        Chapter 9 Proceeding
              Debtor.                     )

---

## SIXTH AMENDED DISCLOSURE STATEMENT
## OF CITY OF PRICHARD, ALABAMA

---

The City of Prichard, Alabama by and through its counsel, files this Sixth Amended

Disclosure Statement ("Disclosure Statement") in support of the contemporaneously filed  Sixth

Amended Plan of Adjustment (the "Plan") pursuant to § 901 of Chapter 9, Title 11 of the United

States Code, 11 U.S.C. § 101, *et. seq.* (the "Bankruptcy Code").

Included in this Disclosure Statement is a Plan Summary which provides a significant

amount of information regarding the implementation of the Plan.  You are urged to read this

Disclosure Statement in order to understand all of the operative terms and conditions and in

order to have a fully informed vote on the Plan.


## CONCEPT OF THE DISCLOSURE STATEMENT
## AND PLAN OF ADJUSTMENT

This Disclosure Statement provides information in support of the orderly administration

of the assets and the distribution of the available proceeds to holders of Allowed Claims

contemplated by the Plan.

# ARTICLE I: DEFINITIONS

The terms used herein shall have the meanings, unless the context clearly requires otherwise, of the definition provided for such terms in the contemporaneously filed Plan.

# ARTICLE II: RULES OF INTERPRETATION; COMPUTATION OF TIME AND GOVERNING LAW

**A.     Rules of Interpretation.**

For purposes of this Disclosure Statement (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) any reference in this Disclosure Statement to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Disclosure Statement to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented from time to time pursuant to this Disclosure Statement; (d) unless otherwise specified herein, any reference to an entity as a holder of a Claim include that entity's successors, assigns and affiliates; (e) unless otherwise specified, all references in this Disclosure Statement to Articles and Sections are references to Articles and Sections of or to this Disclosure Statement; (f) unless otherwise specified, all references in this Disclosure Statement to Exhibits are references to Exhibits of or to the Plan; (g) the words "herein" or "hereto" refer to this Disclosure Statement in its entirety rather than to a particular portion of this Disclosure Statement; (h) captions and headings to Articles, Sections and Exhibits are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretations

of this Disclosure Statement; and (i) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

To the extent the Disclosure Statement and Plan are inconsistent, the terms of the Plan shall control.

**B.      Computation of Time.**

In computing any period of time prescribed or allowed by the Disclosure Statement or the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**C.      Governing Law.**

Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release or other agreement or document entered into in connection with this Disclosure Statement, the rights and obligations arising under this Disclosure Statement shall be governed by, and construed and enforced in accordance with, the laws of the State of Alabama.

## ARTICLE III: DISCLAIMER

This Disclosure Statement is a solicitation of the Debtor only.  It is not a solicitation of its attorneys, accountants, agents or servants, and representations made herein are those of the Debtor and not of the Debtor's attorneys, accountants, agents or servants, except as otherwise stated.  The financial information contained herein has not been subject to an audit.

## IV: THE DEBTOR

The Debtor is an Alabama municipality which filed for protection under Chapter 9 of the Bankruptcy Code on October 27, 2009.  The Chapter 9 case is currently pending before the

Honorable William S. Shulman, United States Bankruptcy Judge, Case No 09-15000. Since the Filing Date, the Debtor has continued to operate and provide city services.

A.        **Events Leading to Chapter 9 Filing**

During the summer of 2009, the Debtor's faced increasing pressures regarding its operational budget and its pension reserves from which it paid its pension obligations to former employees. In the summer of 2009, the City took dramatic steps to reduce its operating budget to be able to provide basic city services without operating the City at a deficit. Contemporaneously, the City's pension obligations to its retirees were ongoing, but the remaining monies left in the dedicated pension were dramatically dwindling.

The City's pension fund has been under substantial fiscal pressure since the City's prior bankruptcy filing. As a part of the City's prior plan, retirees had previously agreed to modify their treatment. The treatment of retirees and the pension were memorialized in the City's published plan. That pension plan, arising from the prior bankruptcy, agreed to by the City and the retirees has been effective since January 1, 2002. This plan modified a prior pension plan that was established under certain local laws that allowed for the City to create a pension. In addition to the pension modifications, the earlier bankruptcy plan called for the City to provide an infusion of sixteen million dollars into the pension fund. As of the Petition Date, the City's fiscal resources have not allowed for it to make this contemplated infusion.

In the fall of 2009, the City took steps to authorize the mayor to take a series of actions to protect the City's interests in the shadow of a severe financial crisis. Specifically, the City became unable to meet its monthly pension obligations to its retirees in September 2009. Litigation by certain retirees was instituted and lawsuits were brought to bring focus to the problem of the under-funded pension obligations of the City.

Pursuant to the City Counsel's prior authorization, the previous Mayor authorized the filing of the pending Chapter 9 proceeding on October 27, 2009.

### B.      Events Arising Subsequent to the Petition Date

After the filing of the petition, by and through counsel, the City took necessary steps to effectuate a smooth transition and operation under Chapter 9 of the Bankruptcy Code. Various typical pleadings were filed and ruled upon which provided for the City's ongoing operations. In addition, the City successfully objected to a relief from stay motion filed by certain of the City's pensioners who sought to continue their ongoing litigation regarding the City's under-funded pension obligation.

As part of the City's post-petition operations, it has made payments to its "ordinary course" vendors. These payments include some pre-petition obligations of the City. It should be noted, however, that a vast majority of these obligations fall into two categories. First, the payroll and related benefits arising pre-petition were paid by the City post-petition. Second, the City paid pre-petition bills pursuant to ongoing contracts, leases, or necessary city functions. Included in this second category of payments were disbursements for insurance, utilities, garbage service, equipment leases and taxes. The City has reviewed these payments and does not believe that any material payments were made outside these categories.

In addition, Counsel believe that there are no avoidable transfers pursuant to § 549 of the Bankruptcy Code. In order to make a recovery under this section, the City would be compelled to prove that its actions were not authorized. In short, the contrary is true because all of the post-petition transfers were made pursuant to the City's budget and were authorized by local law. Moreover, the Court is barred, pursuant to § 904 and absent consent, from interfering with "any of the property or revenues of the debtor." In summary, the City made decisions regarding its

property to protect the "ordinary course" operations of the City and in compliance with applicable law.

Since the filing, a Creditor Committee was appointed and counsel was appointed to represent unsecured creditors' interest. After argument and pleadings, the Court authorized the appointment of counsel, but supported the Debtor's position that it is not obligated to pay for the professional fees of the committee. Subsequently, the Court has ordered the dismissal of counsel and the dissolution of the Creditor Committee.

In the summer of 2010, the Debtor had submitted its Third Amended Disclosure Statement and Third Amended Plan. The Court had orally approved the Third Amended Disclosure, but subsequent events intervened and barred the Third Amended Plan from proceeding. Namely, based upon a motion by certain parties-in-interest, the Court ordered the dismissal of this case. That dismissal was timely appealed and subsequent arguments and briefs took place before the District Court and before the Alabama Supreme Court. The ultimate result of the appeal was that the District Court reversed the decision of this Court in dismissing this case by an order dated April 20, 2012.

During the intervening time period, while this case was on appeal, the Debtor reached a consensual resolution with the pensioners. That settlement is embodied in the settlement agreement attached as Exhibit A (the "Pension Settlement Agreement"), and is further incorporated into the Debtor's Disclosure Statement and Plan.

On June 12, 2012, the Court conducted a status conference. At that hearing, after taking into consideration all the relevant information, the Court ordered a Disclosure Statement and Plan be filed on or before September 18, 2012. Subsequently, a new mayor and city counsel were elected in November, 2012. After consultation with relevant parties and the court, and

upon motion of the City, the Court allowed for an extension of time through February 19, 2013 to file a Disclosure Statement and Plan.

Subsequently, various motions to dismiss and mediation efforts have taken place. Embodied in this Disclosure Statement and contemporaneously filed Plan is a settlement with certain current vested employees who have vigorously contested this bankruptcy. The City believes that this resolution will be the final hurdle that will be necessary to cross in the final approval of their Plan.

The City has worked aggressively to identify its assets and create a realistic budget which provides minimal basic city services. By and through the contemporaneously filed Plan, the City seeks to modify certain of its obligations and to provide a mechanism to continue to provide city services to the City's residents and businesses.

## ARTICLE V: EXISTING ASSETS AND REMAINING OPERATING ADMINISTRATIVE EXPENSES

Currently, the Debtor continues to operate as a municipality on behalf of its citizens and claimants.

### A    Current Budget

The City's current budget is believed to be both prudent and provide a balanced approach to meeting the City's ongoing obligations to provide services to its citizens. The budget represents both revenues and expenditures that are reasonable and necessary for the functions of the City. A summary of the current proposed budget is attached as Exhibit B-1. Moreover, the City's complete budget is a public record and will be available for review at the City's offices. Additionally, attached as Exhibit B-2 is a summary of the latest monthly financial report

prepared by the City's finance department for December 2013. A complete copy of this report with all attachments is available for review at the City's offices.

The City believes that this budget is substantially similar to future budgets that will likely be enacted in the following years as provided for under the Plan. The City does not anticipate either significant revenues or expenditures which would substantially alter this plan and provide for additional resources to pay its creditors. As such, the City believes that the Plan will necessarily be driven by the City resources available in the future and this budget represents a fair and accurate representation of those future City resources.

The City has filed a claim for a recovery against BP arising from the recent gulf oil spill. This claim is only in its initial state and is speculative. The demonstrable actual loses identified by the City are for approximately $500,000.00. Given the speculative nature of this claim, the City's budget and proposed plan do not reflect this potential future revenue. In the event the City does receive funds from this claim in the future, the City reserves the right to use these funds in its discretion.

## B. Pension Assets

The Pension Settlement Agreement provided for the lump sum payment of certain pension benefits that had accrued prior to that settlement. In addition, the settlement provided for the regular payment of reduced payments to retirees. The City has and intends to continue to perform under the terms of the Pension Settlement Agreement. In addition, the City proposed to liquidate the existing pension plan and provide for the distribution of the remaining funds described below and provided for in the Plan.

### C.  Other Assets

The City has existing assets and may acquire surplus assets in the future.  The City's audited financial report reflecting the City's financial condition as of September 30, 2012 is now final.  The audit may be reviewed by any person requesting such information at the City's offices.

The City currently has a municipal golf course.  The City intends to market and hopefully sell this golf course to a third party who will be able to provide upkeep maintenance and provide for the ongoing operation of the golf course.  The City is uncertain as to when and how any disposition of this property will take place.  It should be noted that the City's golf course is encumbered and as a result, the City believes little, if any, funds will be available from the future disposition and sale of the City's golf course.  If such funds were to become available, these funds would be used to provide for ongoing city services.

### D.  City Governance

The City operates, pursuant to applicable law, in a Mayor-Council form of government.  The current mayor is Troy L. Ephriam.  The current City Council members are Lorenzo Martin, Derrick Griffin, Earline Martin-Harris (president), George McCall and Ossia Edwards.


### ARTICLE VI: PLAN SUMMARY

The Plan is premised on the necessity to continue to provide essential city services to the residents of the City, the Debtor proposes in the Plan as follows:

### A.  Means of Implementation

1.  <u>In General</u>.

The Plan provides a mechanism to pay for ongoing city services and to allow for the partial payment of pre-petition obligations.

2. <u>Classification of Claims.</u>  The following table depicts the classification of Claims against the Debtor:

| Class I | Administrative Claims | Unimpaired |
|---------|----------------------|------------|
| Class II | Priority Tax Claims | Unimpaired |
| Class III | Secured Claim of Commonwealth National Bank | UnImpaired |
| Class IV | Claims of Governmental and Quasi-Governmental Entities | Impaired |
| Class V | Ordinary Course of Business Claims | Unimpaired |
| Class VI | Ordinary Course Insured Claims | Impaired |
| Class VII | Current Employee Retirement Claims | Impaired |
| Class VIII | Retired Post Petition Date and Early Retiree Employees | Impaired |
| Class IX | Retired Vested Employees Covered in the Pension Settlement Claim | Impaired |
| Class X | Former Non-Vested Employee Pension Claims | Impaired |
| Class XI | Non-ordinary Course of Business and Deficiency Claims | Impaired |

3. <u>Treatment of Classes</u>

<u>Class I: Administrative Claims.</u>  This class consists of claims arising pursuant to Section 503 of the Code.  As of today's date, the Debtor is current on all of its post-petition obligations arising in its ordinary course of business.  Certain professionals engaged by the Debtor for non-bankruptcy related services shall be timely paid.  Bankruptcy Counsel for the Debtor as of January 23, 2014 has been paid approximately $340,000.00 in fees that has been applied to prior invoices since the filing of the petition. Any fees and charges assessed the City

under chapter 123 of title 28 shall be paid in full in cash on the effective date of the Plan. Any other claims which may be allowed under section 503(b) of the Bankruptcy Code shall be paid in full in cash on the effective date of the Plan, or alternatively, upon such terms as the City and the claimant may agree.

Class I is unimpaired.

Class II: Priority Tax Claims. This class consists of tax claims owed to the Internal Revenue Service ("IRS") and the Alabama State Department of Revenue (the "Alabama Revenue Department"). On the petition date, the Debtor had some outstanding tax claims owed to the IRS and the Revenue Department.

Subsequently, the Debtor believes it has paid in full the claims of the IRS and the Alabama Revenue Department and to the Debtor's knowledge is current on all existing tax obligations. The Alabama Department of Industrial Relations filed a claim which the Debtor has paid in the ordinary course of business. The Debtor has filed an objection to this claim which the Court sustained and the claim is disallowed.

Additionally, the IRS filed a claim for approximately $10,000.00 for taxes, penalties and interest arising from FICA taxes. The City disputed this claim and it has subsequently been resolved. Since the filing of the petition, the City believes it is current on all of its tax obligations.

Class II is unimpaired.

Class III: Secured Claim of Commonwealth National Bank. This Class consists of the secured claim of Commonwealth National Bank in the approximate amount of $195,715. The Claimant holds a Mortgage on certain real property of the Debtor. The Note, secured by the Mortgage, is paid on a monthly basis for both principal and interest in installments of

approximately $1500.00 over a remaining term of approximately 213 months or 18 years. The City has made the regular payments which have become due since the filing of the petition and the obligation is not in default.

The City proposes to pay this obligation according to the terms of the promissory note. The City will continue to make the monthly payments of principal and interest as required by the promissory note. The member of this class will retain its lien on the real property collateral until the obligation is satisfied. Upon payment in full of the obligation by the City the mortgage securing the note shall be released.

Class III is unimpaired.

Class IV: Claims of Governmental and Quasi-Governmental Entities:

This class consists of the claims of the South Alabama Regional Planning Commission, the Mobile County Emergency Management Agency, the Mobile County Personnel Board and the Mobile County Health Department. These are member organizations that the City belongs to as part of its participation in regional functions. With respect to the City's obligations to each of these organizations, the City desires to continue such agreements and future obligations to each of the organizations. The City proposes the treatment of any existing and outstanding obligations will be satisfied by the filing of an unsecured claim and treatment as a Class IX claim. Further, the City agrees to maintain and stay current on its future obligations to these entities.

The identity and address of the organizations are attached as Exhibit C.

Class IV is impaired.

Class V: Ordinary Course of Business Claims. At the time of the filing of the Petition, the Debtor had certain ordinary course of business claims related to its pre-petition operations.

The Debtor believes that it has paid all of such claims and is current on all such obligations. The Debtor proposes to continue to pay such ordinary course of business obligations prior to and subsequent to the Effective Date.

The Ordinary Course of Business claims are unimpaired.

Class VI:  Ordinary Course Insured Claims.   Prior to and subsequent to the Petition Date, claims were filed against  the Debtor  for which the Debtor had insurance coverage.  This insurance coverage  included the costs of defense and in some cases liability.   During the pendency of the bankruptcy, the Debtor has entered into agreements for relief from the stay with some of these claimants in order to liquidate the claims and to recover any insurance proceeds which may be available.

The Debtor proposes that claims for which liability coverage is provided be limited in their recovery to only those insurance proceeds that may be paid by the insurance provider after the Debtor's deductible is credited against the claim.  Members of this class shall include only those claims which arise prior to the effective date and for which there is insurance coverage and for which the City has notice. The balance of any claim not paid by insurance shall be deemed a general unsecured claim and receive the treatment afforded to claims in Class XI.

Class VI claims are impaired.

Class VII:  Current Employee Pension Claims.   This class shall consist of the claims of the current merit system employees of the City for contributions made to the City's existing pension plan.   These claims will be modified pursuant to the Plan to move the retirement funding function from the current pension system to one provided for pursuant to Section 457(b) of the Internal Revenue Code. The sponsor of this program shall be the Retirement

Systems of Alabama under its RSA-1 program, or a similar independent qualified administrator. The new plan will provide for transferring existing account balances paid by each employee, that have accrued since the Petition Date, and transferring those funds from the City's control to the direct control of employees under the new plan. Any and all claims, rights or interests held by the members of this class arising in any way from the Act 107 Pension Plan shall be extinguished upon confirmation of the Plan. Class VII claims are impaired.

Class VIII: Retired Vested Employees Not Covered in the Pension Settlement Agreement. This class shall consist of the pension benefit claims of persons (i) who were employed on the Petition Date, with an initial employment date on or before 20 years prior to the Effective Date of Plan or (ii) who retired after the Petition date and before the Effective Date but are not parties to the Retiree Settlement Agreement, and shall include the pension benefit claims of the surviving spouses of such persons. This Class includes current employees who are vested under Act No. 107 and age eligible to retire on the Effective Date, current employees with an initial employment date on or before 20 years prior to the Effective Date who are not yet both vested under Act No. 107 and age eligible to retire on the Effective Date, and retired employees who were employed on the Petition Date but retired prior to the Effective Date, excluding any retired employee who is a party to the Retiree Settlement Agreement.

Upon retirement, a member of Class VIII shall be paid by the City a monthly retirement benefit equal to 85% of the benefit otherwise calculated for the member as provided in the Act No. 107 Plan. The surviving spouse of a member of Class VIII shall be paid by the City a monthly benefit equal to 45.75% of the benefit otherwise calculated for the deceased member as provided in the Act No. 107 Plan. Payment to a Class member who retired prior to the Effective Date will be paid retroactive to the member's retirement date in a lump sum on or within 30 days

after the Effective Date.       A member of Class VIII (a) may have retired before the Effective Date, or (b) must retire within 60 days after Effective Date if vested and age eligible on the Effective Date, or alternatively, (c) must retire within 60 days after the date the person is first vested and age eligible if not age eligible on the Effective Date. Any member of Class VIII who does not retire as required under this provision will forfeit entitlement to Class VIII benefits and for pension purposes will be treated as a member of Class VII.

Except for a member who forfeits entitlement to Class VIII benefits by failing to retire as provided under this provision, members of Class VIII shall waive entitlement to any funds that are individually earmarked and contributed by them and held by the City after the Petition Date.

To fund the required Class VIII benefits the City shall annually by the 1st day of the second month of each fiscal year deposit an amount equal to the aggregate of all Class VIII benefits to be paid during the following 12 month period into a separate escrow account to be denominated as the "Class VIII Benefits Holding Account," such account to be established and maintained with a federally insured bank of the City's choosing. To the extent that additional persons become entitled to Class VIII benefits during such twelve month period, the City shall make a supplemental deposit into the account of an amount equal to the aggregate of benefits to be paid to such additional persons during the remainder of the twelve month period. All money deposited in the separate escrow account shall be held in such account until paid over to the appropriate Class VIII members as provided in this Plan. The Class VIII Benefits Holding Account shall be administered by the City; provided that all bank statements and records of all deposits, payments, and other transactions relating to the account shall be made available to any Class VIII member for inspection and copying upon five (5) days written request delivered to the Clerk of the City. All monies deposited in the account shall be the property of the Class VIII

members as a group held in trust by the City for the benefit of the Class VIII members and shall not constitute property or assets of the City.

Class VIII claims are impaired.

Class IX.  Current Vested Employee Pension Claims.  This class is represented by the claim of the former employees who have settled their claims against the City pursuant to the Retiree Settlement Agreement.   The terms and conditions of the Retiree Settlement Agreement are hereby incorporated by reference in their entirety as if set forth in full, and the terms and conditions of the Retiree Settlement Agreement constitute the treatment proposed by the City to the members of this class.

Class IX claims are impaired.

Class X.  Former Non-Vested Employee Pension Claims.  Under the City's current pension plan, a non-vested employee who leaves the employment of the City is entitled to the return of their self-contributed funds to the pension plan.   Currently, there are former employees who have a claim on the pension for the return of such funds.  The City proposes to treat these claims through the pro-rata distribution of the remaining funds held in the pension account to such claimants (provided that such claims will share such pro-rata distribution with those current employees who are part of Class VII and who elect such treatment).

The Claims of Class X are impaired.

Class XI:  Non-ordinary Course of Business and Deficiency Claims.  This class shall consist of all other allowed unsecured claims against the Debtor.  The Debtor will make an annual payment of $50,000.00 to be distributed pro rata to this class.  The initial payment shall be made 180 days after the Effective Date.  The payments shall be made annually for a period of five years.  This class shall include deficiency claims of former employees who have claims

against the existing pension plan, but are not vested in such plan and are treated in Class X These employees, in order to receive a distribution under the Plan, must file a claim prior to the Bar Date. This class also includes the claim of Yvonne M. Baldwin and other non-ordinary course creditors. Ms. Baldwin's claim was originally filed as secured, but pursuant to the Court's prior order, shall be treated as unsecured. The balance of Class VI claims which are not paid by insurance are also included in this Class.

The General Unsecured Claims, Non-ordinary Course of Business and Deficiency Claims of Class XI are impaired.

4. <u>No Accrual of Post-petition Interest for Unsecured Claimants.</u> Except as otherwise provided in the Plan, no Claimant of an Unsecured Claim shall be entitled to the accrual of post-petition interest or the payment by the Debtor or the Debtor or their successor of post-petition interest on account of such Claim for any purposes.

Except as otherwise provided in this Plan, no Claimant of an Unsecured Claim shall be entitled to the accrual of post-petition interest or the payment by the Debtor or the Debtor or their successors of post-petition interest on account of such Claim for any purpose.

5. <u>Reservation of Right to Confirm Plan Through a Cram-Down</u>

Notwithstanding the rejection or deemed rejection of this Plan by any Class of Claims, the Debtor reserves the right to confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, the cram-down provision, incorporated by Section 901 of the Code.

6. <u>Funding of Plan</u> The Plan will be funded by cash deposits or based on the future revenues of the City.

7. <u>Distributions under the Plan</u>

(a) Means of Payment.

Any payment of cash made under the Plan may be made by either check or by wire transfer. The Debtor shall be entitled to deduct any federal, state or local withholding taxes from any payments under this Plan. As a condition to making any distribution under this Plan, the Debtor may require that the holder of any Allowed Claim provide such holder's taxpayer identification number and such other certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

  (b)  De Minimis Distributions.

  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent. No interim Distribution will be made on account of any Allowed Claim if the amount of such Distribution is less that $5.00. On the Final Distribution Date, the Debtor shall (i) aggregate the amount of all Distributions that would have been made on account of an Allowed Claim but for this de minimis provision and (ii) make a Distribution on account of such Allowed Claim in accordance with the Plan. If a distribution of less than $5.00 (unless such distribution would result in such Claimant being paid in full) is to be made under this Plan, then the holder of the Allowed Claim with respect to which such distribution is to be made shall receive no distribution, but the funds that would have been distributed to such Claimant shall be held by the Debtor in trust for such Claimant until the next Interim Distribution or the Final Distribution, as the case may be, and such withheld distribution shall be aggregated with such next Interim or Final Distribution when determining the amount to be distributed to such Claimant and whether such distribution is *de minimis*, as provided in this Section.

  (c)  Addresses.

Case 09-15000 Doc 396 Filed 01/24/14 Entered 01/24/14 13:52:24 Desc Main
Document Page 19 of 29

19

Except as otherwise provided herein, distributions to Claimants of Allowed Claims shall be made: (a) at the addresses set forth on the respective proofs of Claim Filed by such Claimants; (b) at the addresses set forth in any written notices of address change delivered to the Debtor after the date of the Filing of any related proof of Claim; or (c) at the address reflected in the Schedules or the exhibits attached to this Disclosure Statement.

(d) Undeliverable Distributions.

(i) If any Claimant's distribution is returned to the Debtor as undeliverable, no further distribution will be made to such Claimant unless the Debtor is notified in writing of such Claimant's then current address. Undeliverable distributions will remain in the possession of the Debtor until such time as the distribution becomes deliverable. Undeliverable cash will be held in trust for the benefit of potential Claimants of such cash, subject to ultimate distribution in accordance with subsection (ii) below.

(ii) Any Claimant of an Allowed Claim who does not assert a right to an undeliverable distribution within six (6) months after any given Distribution or the Final Distribution, as the case may be, will be forever barred from asserting its Claim related to such undeliverable distribution against the Debtor or the Debtor, and such undeliverable distribution shall become available for further distribution in accordance with this Plan. Nothing contained in this Plan shall require the Debtor to attempt to locate any Claimant of an Allowed Claim.

(e) Compliance with Tax Requirements.

(i) In connection with this Plan, to the extent applicable, the Debtor shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit, and all distributions pursuant to this Plan shall be subject to such withholding and reporting requirements, and the Debtor shall be authorized to pay excise or other employer-

related taxes.  The Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

(ii)     Notwithstanding any other provision of this Plan, each entity receiving a distribution of cash pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding and other tax obligations, on account of any such distribution.

(f)     Disputed Claims.

On the Confirmation Date there may exist Claims that are disputed.  Within the latter of sixty (60) days after the Confirmation Date, or sixty (60) days after the Filing of a proof of Claim, only the Debtor shall be permitted to file an objection to the allowance of any Claim, and shall prosecute the objection to completion.  A Claim which is not an Allowed Claim as of the Confirmation Date, but which becomes an Allowed Claim subsequent to the Confirmation Date will be treated in accordance with this provisions of this Plan.  All Disputed Claims which become Allowed Claims will receive their initial distribution on the latter of (i) the first Distribution date, or (ii) the date which the Order allowing their Claim becomes a Final Order.

Property to be distributed under this Plan on account of Claims that are not Allowed Claims as of the Effective Date shall be held in a separately designated account, pending the allowance or disallowance of the Claim.  Payments and distributions to holders of Disputed Claims, to the extent such Claims ultimately become Allowed Claims, will be made from the separately designated account in accordance with this Plan.  If any funds remain in the separately designated account after resolution of all objections to the Disputed Claims, such remaining funds shall be distributed in accordance with this Plan.

To the extent that the Debtor has filed a motion to subordinate Claims or any other suit, any distribution that would otherwise be distributable to the respondents or defendants of such motion or suit shall be withheld from distribution in the specially designated account until resolution of such motion, and the right thereto shall be determined by the Court. If the Court determines that such Claims shall be subordinated and such determination becomes a Final Order, the distributions withheld shall be distributed pursuant to this Plan.

       (g)      Executory Contracts and Unexpired Leases.

On the Confirmation Date, the Debtor will be deemed to have accepted all executory contracts and unexpired leases not otherwise addressed. The Debtor has and shall explicitly reject all contracts related and arising out of its existing pension plan and the Act 107 pension plan.

       (h)      Conditions and Confirmation.

Except as expressly waived in writing by the Debtor upon written notice filed with the Bankruptcy Court, the following conditions must occur and be satisfied on or before the Effective Date for the Plan to be effective:

       1.      The Confirmation Order approving all of the terms and provisions of the Plan shall have been signed by the Bankruptcy Court and duly entered on the docket for the case by the clerk of the Bankruptcy Court.

       2.      There shall not be any stay in effect with respect to the Confirmation Order.

       3.      The Confirmation Order shall be a Final Order.

       (i)      Indemnification Obligations.

For purposes of the Plan, the obligations of the Debtor to defend, indemnify, reimburse or limit the liability of any current and former officers or employees (in their capacity as such) who were officers or employees, respectively, before, on or after the Petition Date against any claims or obligations pursuant to applicable state or federal law or any specific agreement, or any combination of the foregoing, shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged irrespective of whether indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before, on or after the Confirmation Date.

    (j)   Modification of Plan.

Subject to the restrictions on modifications set forth in section 942 and 1127(d) of the Bankruptcy Code, the Debtor reserves the right to alter, amend or modify this Plan before its substantial consummation with leave of Court. After the Confirmation Date, the Debtor may, with approval of the Court, and so long as it does not materially or adversely affect the interest of creditors, remedy any defect or omission, or reconcile any inconsistencies in this Plan, or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and intent of this Plan.

    (k)   Revocation of this Plan.

The Debtor reserves the right to revoke or withdraw this Plan prior to the Confirmation Date. If the Debtor revokes or withdraws this Plan, or if Confirmation does not occur, then this Plan shall be null and void in all respects, and nothing contained in this Plan shall: (a) constitute a waiver or release of any claims by or against the Debtor; (b) prejudice in any manner the rights of the Debtor, the Debtor; (c) constitute an admission by the Debtor of any statements made in

Case 09-15000 Doc 396 Filed 01/24/14 Entered 01/24/14 13:52:24 Desc Main
Document Page 23 of 29

23

this Plan or the Disclosure Statement; or (d) constitute an agreement of the Debtor to be bound by the terms and conditions set forth in this Plan.

**B.        Severability of Plan Provisions**.

If, prior to the Confirmation, any term or provision of this Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## ARTICLE VII: CONFIRMATION OF THE PLAN

**A        Procedures.**

Holders of claims should carefully read the instructions contained on the ballot, complete, date and sign the ballot and transmit it to the address indicated on the ballot.  In order for a vote to be counted, the ballot must be received at the address identified on the ballot not later than the date set by the Court.  A class of impaired claims will have to accept the plan by creditors holding two-thirds in amount and more than one-half in number of the allowed claims of such class.

A ballot to be used for voting to accept or reject the Plan is enclosed with all copies of this Disclosure Statement and mailed to creditors entitled to vote.  BEFORE COMPLETING

YOUR BALLOT, PLEASE READ CAREFULLY ANY MATERIALS AND INSTRUCTIONS THAT MAY ACCOMPANY THE BALLOT.

**B.      Hearing on the Confirmation.**

A hearing on the adequacy of the Disclosure Statement and on the confirmation of the Plan will be held on dates set by the Court.

The City believes that certain creditors are entitled to vote on the Plan. Specifically, the City believes that Claimants under Classes VII, VIII, IX, X and XI are entitled to vote. A ballot to assume or reject proposed treatment under the plan shall be provided to each of the Claimants in the Plan. The lists of those receiving ballots are those that are attached in the Exhibits to this Disclosure Statement.

**C.      Consequences of Failure to Confirm Plan.**

In the event the requirements for confirmation of the Plan are not satisfied, the Debtor reserves the right and the opportunity to seek the confirmation notwithstanding an adverse vote in any class of claimants, or to amend the Plan to remedy any deficiency or submit a new plan.

**ARTICLE VIII: TAX ASPECTS OF DISTRIBUTION UNDER THE PLAN**

The Debtor believes that under present laws and regulations there should be no adverse federal income tax consequences affecting the reorganized Debtor arising from the confirmation and performance of the Plan or in connection with the distribution to creditors and interest holders provided by the Plan and other consequences normally related to payment, partial payment, or forgiveness of an obligation by a debtor to a creditor.

THE FOREGOING DESCRIPTION OF FEDERAL INCOME TAX CONSEQUENCES CONCERNS ONLY THE TAX CONSEQUENCES UPON THE DEBTOR AND IS INTENDED MERELY AS AN AID FOR CREDITORS, AND NEITHER THE DEBTOR NOR ITS COUNSEL PROPOSES TO OFFER TAX ADVICE HEREBY TO CREDITORS CONCERNING THE TAX RAMIFICATIONS OF THIS PLAN UPON CREDITORS. THE DEBTOR AND ITS ATTORNEYS DISCLAIM ANY LIABILITY OR RESPONSIBILITY TO CREDITORS REGARDING THEIR OWN TAX MATTERS AND CREDITORS AND INTEREST HOLDERS ARE URGED TO OBTAIN ADVICE FROM THEIR COUNSEL OR ADVISOR REGARDING THE APPLICABILITY OF FEDERAL AND STATE TAX LAWS.

## ARTICLE IX:  AUTHORIZATION

This Disclosure Statement and Plan and the provisions thereto have been explicitly authorized by the City.  Attached hereto is an authorizing resolution as Exhibit D.

Respectfully submitted this 24th day of January, 2014.


_____ */s/ Troy L. Ephraim*
Troy L. Ephraim, Mayor
City of Prichard, Alabama

*/s/ R. Scott Williams*
R. Scott Williams
Jennifer B. Kimble
Counsel for the City of Prichard, Alabama

Of Counsel:
R. Scott Williams
Jennifer B. Kimble
RUMBERGER KIRK & CALDWELL
Lakeshore Park Plaza, Suite 125
2204 Lakeshore Drive
Birmingham, Alabama 35209-6739
Phone:  205-327-5550
Fax:  205-326-6786
swilliams@rumberger.com
jkimble@rumberger.com


C. Michael Smith
Suzanne Paul
Paul and Smith, P.C.
150 South Dearborn St.
Mobile, Alabama 36602
Phone:  251.433.0588
Fax:  251.433.0594
paulandsmithpc@earthlink.net

# CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading was electronically served this the 24th day of January, 2014 in accordance with the method established under this Court's CM/ECF Administrative Procedures upon all parties in the electronic filing system in this case.

The following parties were served by placing a copy of same in the United States Mail postage prepaid and properly addressed as follows:

Robert J. Hedge
Miller & Hedge, P.C.
P.O. Box 2232
Mobile, Alabama 36652

Lawrence B. Voit
Alexander K. Garrett
Silver, Voit & Thompson
4317-A Midmost Drive
Mobile, Alabama 36609

Travis M. Bedsole, Jr.,
Bankruptcy Administrator
P.O. Box 3083
Mobile, Alabama 36652-3083

Donald Stewart
Cabaniss, Johnston, Gardner, Dumas & O'Neal
P.O. Box 2906
Mobile, Alabama 36652

*/s/ R. Scott Williams*
Of Counsel

4648487_1