# EXHIBIT

# A

# AGREEMENT BETWEEN CERTAIN RETIREES AND
## THE CITY OF PRICHARD, ALABAMA

This Agreement is entered into by and among the City of Prichard, Alabama and those persons constituting the Retirees defined herein and/or who execute this Agreement under the following terms:

1. **Definitions:** All capitalized terms contained in this Agreement shall have the meaning set out in this "Definitions" section, to-wit:

a. **"Adjusted Monthly Amount"** means the sum of Fifty Thousand and No/100 ($50,000.00) Dollars or the pro-rata amount of said $50,000.00 that is attributable to all Retirees who are parties to this Agreement, whichever is less; provided, however, that, if the amount of monthly funding necessary to pay all living Retirees one-hundred and twenty-five (125%) percent of their collective Original Monthly Amounts, then Adjusted Monthly Amount shall mean only the amount necessary to pay said Retirees one-hundred and twenty-five (125%) percent, but shall never exceed Fifty Thousand and No/100 ($50,000.00) Dollars or the pro-rata amount of said $50,000.00 that is attributable to all Retirees who are parties to this Agreement, whichever is less as approved by the Circuit Court on the Settlement Date. Beginning with the City's Fiscal Year 2011-2012, an amount equal to twelve (12) months of the Adjusted Monthly Amount as determined on the Settlement Date, shall be deposited in the "Retirees' Benefit Holding Account". This deposit shall be made no later than April 30 of each fiscal year and notice of said deposit shall be sent to every Retiree. Nothing herein shall restrict or lessen the Retirees' rights to receive additional payments in the form of Betterment Distributions as addressed hereafter.

b. **"Arrearage Amount"** means sixty-five and 625/1000 (65.625%) percent of the Plan Settlement Balance and is the same as "Plan Settlement Balance-City's Contribution". For each Retiree, an "Arrearage Amount" is established on the Attachment 1, which displays a column showing the agreed amount of the total Arrearage Amount that is attributable to each individual Retiree before payment of any Prorata Portion under this Agreement. The parties acknowledge and agree that the remaining thirty-four and 375/1000 (34.375%) percent of the Plan Settlement Balance shall be returned to the City for distribution to non-Retiree contributors.

c. **"Betterment Amount"** means the amount in any particular fiscal year that the City's Revenue is increased by Betterment by Growth plus the Betterment by Special Project(s) as calculated herein. At any time after the Settlement Date, if the City elects to implement any form of revenue enhancement measure, whether by an increase in a tax, fees, fines, license or permits or by a program for the collection of delinquent Revenues owed to the City, then to the extent that such revenue enhancement measure produced additional Revenue, only the amount of said

Initials

Case 09-15000 Doc 396-1 Filed 01/24/14 Entered 01/24/14 13:52:24 Desc Exhibit
A - D Page 2 of 24

enhancement that exceeds Six-Hundred Thousand and No/100 ($600,000) Dollars in a fiscal year shall be considered in the calculating of Revenue for determining Betterment.

d. **"Betterment Distribution"** means an amount equal to one-third (1/3) of any Betterment Amount determined to exist at the end of a fiscal year. The Betterment Distribution shall not cease to exist under this Agreement so long as any Fixed Remaining Arrearage Amount remains unpaid to the Retiree(s) and/or the Adjusted Monthly Amount is not equal to one hundred and twenty-five (125%) percent of the Original Monthly Amount for all remaining Retirees entitled to receive under the City's New Retirement Plan. If any Betterment Distribution is determined to exist and be owed, it shall be distributed as set out in this Agreement below.

e. **"Betterment by Growth"** means that portion of City's Revenue from taxes and licenses for each subsequent fiscal year in excess of the Revenue Base.

f. **"Betterment by Special Project(s)"** means that portion of City's Revenue after the Settlement Date that is related to the development of one or more special projects within the taxing jurisdiction of the City, which shall include the pending "racetrack development" and any other development project for which any City revenue bonds are authorized or City's revenues pledged as security for payment of any portion of said project. In calculating the amount of Betterment by Special Project to be used for payments under this Agreement, the amount of Revenue or other payments made to the City by or from the Special Project(s) shall be reduced by the identifiable increased expense incurred by the City in order to obtain said payments as calculated based on the reasonable and legitimate expenses measured by actual line items expenditures that are attributable to the Special Project(s) as determined by the annual audit conforming to recognized accounting principles. By way of example only, if the City is required to build and staff a fire station for the project, the cost of said construction and operation shall not be included in the amount calculated as Betterment by Special Project; it being the intent of the parties to determine Betterment by Special Projects based on the net payment(s) to the City after deduction of the cost of obtaining said additional payment(s).

g. **"Circuit Court Approval Date"** or **"Settlement Date"** means the date on which the Circuit Court of Mobile County having jurisdiction over the issues among the parties approves the settlement of the parties' dispute and enters a judgment in accordance with the terms of the Settlement Agreement; providing, however, that if all plaintiffs before the Court are not Retirees and parties to this Agreement, then the Court's order of approval shall contain language satisfying Ala. R. Civ. P. Rule 54(b) for finality between the settling parties.

h. **"City"** means the City of Prichard, Alabama.

Initials:

ed. 26 2011-05-12

2

i. **"City's New Retirement Plan"** or **"New Retirement Plan"** means the Pension Plan of the City of Prichard, Alabama as existing for Retirees pursuant to this Agreement on and after the Settlement Date.

j. **"City's Old Pension Plan"** or **"Old Pension Plan"** means the Municipal Employees Pension and Relief Fund of the City of Prichard, Alabama as existing prior to the order of the Circuit Court approving this Agreement.

k. **"Commencement Date"** means the date of the 1st business day of the month next following confirmation by the U. S. Bankruptcy Court of a Plan of Adjustment, (Plan), that is presented by the City of Prichard.

l. **"Original Monthly Amount"** means the monthly amount that was payable to a Retiree under the Old Pension Plan, which is displayed on a column bearing that title on Attachment 1 and is the agreed amount of each individual Retiree's Original Monthly Amount.

m. **"Retirees' Counsel"** means Robert J. Hedge, Esq. or his successor in representation. In the event that any attorney succeeds Robert J. Hedge, Esq. as the Retirees' Counsel, then notice of said change shall be provided to the City in the manner called for by this Agreement.

n. **"Plan Settlement Balance"** means the amount of money actually on deposit in the account holding deposits of the City's Old Pension Plan as of the Circuit Court Approval Date.

o. **"Plan Settlement Balance-City's Contribution"** means 65.625% of the "Plan Settlement Balance" and is the same as "Arrearage Amount".

p. **"Plan Settlement Balance-Employees' Contribution"** means 34.375% of the "Plan Settlement Balance".

q. **"Retiree"** means a person who is a party to this Agreement and (i) who is a retired employee of the City of Prichard, or (ii) who was receiving retirement benefits from the City's Old Retirement Plan as of October 27, 2009 or (iii) who retired at any time subsequent thereto but before the Settlement Date; provided, however, that any person who would otherwise be considered a Retiree except for his or her death shall not be considered to be a Retiree after the date of said death and; provided, further, if such deceased Retiree was survived by a spouse, said spouse shall be considered to be a "Retiree" to the same extent that the deceased Retiree would have enjoyed that status if he or she had not died and said spouse shall hold the status of "Retiree" for so long as the spouse lives. No person shall become a Retiree by marriage, birth or

Initials:

Case 09-15000   Doc 396-1   Filed 01/24/14   Entered 01/24/14 13:52:24   Desc Exhibit
A - D   Page 4 of 24

adoption that occurs after the Settlement Date. Notwithstanding any other portion of this subparagraph and for purposes of payment of Individual Retiree's Remaining Arrearage Amount, the definition of Retiree shall include any surviving spouse who is entitled to receive benefits, the Estate of the deceased Retiree or, if applicable, the Retiree's designated Beneficiary under the New Pension Plan.

r. **"Retiree - Non-Settling"** or **"Non-Settling Retiree"** means a person(s) who would have qualified as a "Retiree" under this Agreement but for the person's refusal to accept the terms of this Agreement before the Settlement Date or as otherwise provided for acceptance in this Agreement.

s. **"Revenue"** means all funds actually received by the City in a fiscal year from sources identified in the City's accounting system as: "Fines & Fees" Account 314, "Taxes" Account 332, and "Permits" Account 361; provided, however, that "Revenue" shall not include funds received from "Miscellaneous Receipts" Account 343, "Transfers" Account 392, reimbursements to the City, proceeds of any loans or bonds, donations to the City, payments by an insurance company under a policy issued to the City or under which the City is an insured or otherwise is entitled to payment, proceeds of a claim(s) made by the City against any person for loss or damage to the City or to City property or any similar payment, money received from grants or money provided to the City by or from the State of Alabama, County of Mobile, any agency of the federal government or from any other governmental organization or entity. In the event that the City changes it accounting system and/or the nomenclature used to describe the sources of funds received by the City, the definition of "Revenue" shall be amended such that the new nomenclature describes the same sources of funding as is herein described and excludes therefrom the same items as are excluded in this definition.

t. **"Revenue Base"** means Revenue in an amount equal to $8,225,000.00 as determined by the City's auditor(s) for said Fiscal Year.

u. **"Retirees' Benefit Holding Account":** The City shall establish and maintain a banking account with a bank of the City's choosing, which shall be known as the "Retirees' Benefit Holding Account". All money addressed in this Agreement that is to be deposited into an escrow account, except where specifically stated to the contrary, shall be deposited into the Retirees' Benefit Holding Account at the time and in such amounts as is provided by this Agreement, including, without limitation, money addressed in paragraph 1.a. regarding funds for payment of the Adjusted Monthly Amount and money to be used as payments of Betterment Distributions. Such money shall be held in said Retirees Benefit Holding Account until said funds are paid over to the appropriate Retiree(s) in the manner set out by this Agreement. The Retirees' Benefit Holding Account shall be administered by the City; provided, however, that the bank statements and records of all transactions shall be made

Initials: 

Case 09-15000   Doc 396-1   Filed 01/24/14   Entered 01/24/14 13:52:24   Desc Exhibit
A - D   Page 5 of 24

available to Retirees' Counsel or his designee on five (5) business days written request by said Retirees' Counsel. All money in the Retirees' Benefit Holding Account shall be the property of the Retirees as a group and said money is held in trust by the City for the benefit of the Retirees under the City's New Retirement Plan. It is specifically acknowledged that money in the Benefit Holding Account is not the property of the City.

2.  **Approval by Circuit Court and Payments Through Retirees' Counsel as Trustee for Retirees:** Beginning on the Settlement Date and continuing until the effective date as determined in the paragraph styled "**Commencement of Payments to Retirees**", (the "Interim Payment Period"), the City shall pay the Adjusted Monthly Amount each month to Retirees' Counsel as trustee for payment to Retirees under the City's New Retirement Plan. During the Interim Payment Period, Retirees' Counsel, as trustee, shall receive said payments and shall make payments in the amount of the prorata Adjusted Monthly Amount to each Retiree who has accepted the terms of this Agreement and shall give notice and proof of said payments to the City on a monthly basis. During the Interim Payment Period, Retirees' Counsel shall not make payments to any Retiree who has not accepted the terms of this Agreement. For any Retiree who has not accepted the terms of this Agreement and for any Retiree whose death terminates further entitlement to such interim payments, Retirees' Counsel shall retain the amount that would have been paid to such Retiree(s) and return said money to the City at the end of the Interim Payment Period and the City shall give Retirees' Counsel a receipt for the amount so returned. The City's sole obligation to make the monthly Adjusted Monthly Amount during the Interim Payment Period shall be satisfied by payment to Retirees' Counsel. Retirees' Counsel's obligation under paragraph 3. of this Agreement shall be deemed fully satisfied upon return to the City of all unpaid money at the end of the Interim Payment Period and an accounting establishing that payments were made to the Retirees in accordance with the terms of this Agreement. During the Interim Payment Period, Retirees' Counsel shall make a written report to the Mayor for the City that shall accurately state the amount paid to each Retiree by Retirees' Counsel. If the Interim Payment Period extends into subsequent fiscal year(s), then Retirees' Counsel shall cooperate with the City in making such Annual Accounting of Payments as required by this Agreement and shall vouch for the accuracy of all payment information provided by Retirees' Counsel and used by the City in making such reports. If Retirees' Counsel receives information regarding the death of any Retiree(s), he shall promptly notify the City as provided by this Agreement and shall make such adjustments as are called for by this Agreement in the payment of benefits based on the death(s).

3.  **Cost of Administration.** The City and Retirees agree that Retirees' Counsel shall be allowed to deduct his reasonable costs and expenses associated with the accounting and distribution of any funds distributed through Retirees' Counsel and that none of this cost shall be borne by the City. Retirees authorize Retirees' Counsel to receive, deposit and distribute such funds as Retirees' Counsel receives. Retirees further

Initials:

ed. 26 2011-05-12                                    5

agree that, if one or more Retiree(s) dies and has no spouse entitled to receive benefits as a Retiree, then Retirees' Counsel shall be entitled to reapportion the distribution of prorata Adjusted Monthly Benefits between and among the remaining Retirees. Retirees, individually and collectively, agree to hold Retirees' Counsel harmless for any claim of negligence in distribution of said funds; provided Retirees' Counsel acts with good faith in conducting the aforesaid duties. As to any funds paid to Retirees' Counsel by the City, the City's sole obligation shall be to pay the correct amount to Retirees' Counsel and thereafter the City's obligation as to said funds shall be considered fully satisfied.

4. **End of Old Pension Plan and Beginning of New Retirement Plan for Participating Retirees:** For participating Retirees, from and after the Settlement Date, the City's Old Pension Plan shall be replaced by the terms of this Agreement as a novation and, thereafter, all claims by any Retiree who is a party to this Agreement shall be subsumed into the rights and remedies set out herein as the City's New Retirement Plan. The parties agree that the City may take such action as it deems appropriate to terminate said Old Pension Plan at the City's expense and, to the extent that any further consent or agreement is necessary to effectuate the termination of said Old Pension Plan, each signatory Retiree shall execute such documents as are requested by City so long as the execution thereof does not reduce the recovery provided to said Retiree under this Agreement.

5. **Distribution of Plan Settlement Balance:** Within ten (10) business days next following the Settlement Date, the City shall cause sixty-five and 625/1000 (65.625%) percent of the Plan Settlement Balance to be paid to Retirees' Counsel, for deposit in Retirees' Counsel's trust account. Such payment shall fully satisfy the City's obligation to make this distribution. For each Retiree, a Prorata Portion of the Arrearage Amount is established on the Attachment 1, which displays a column showing the agreed amount that may be paid to the individual Retiree. No Retiree shall be entitled to receive his or her Prorata Portion of the Arrearage Amount without first signing and becoming fully bound by this Agreement. For each Retiree that enters into and signs this Agreement, Retirees' Counsel shall distribute said Retiree's Prorata Portion, less attorney fees and expenses. Any funds that are not paid due to Retiree(s) declining to enter into and sign this Agreement shall be returned to the City within forty-two (42) days after the initial disbursement of the money from the City to Retirees' Counsel. Retirees' Counsel shall also provide the City a true list of the name(s) of any Retiree(s) that declined to sign this Agreement. Any money that is so returned to the City shall be redeposited in the City's Old Pension Plan account. Retirees have no claim to any portion of the **Plan Settlement Balance-Employees' Contribution**, which said funds shall be placed in the City's custody for disposition as the City determines to be proper. A certified copy of this Agreement as approved by the Court shall serve as authorization for the Trustee of the Municipal Employees Pension and Relief Fund to distribute funds in accordance with this provision.

Initials:

6.    **Establishment of Each Retiree's Remaining Arrearage Amount:**  For each participating Retiree, a "Fixed Remaining Arrearage Amount" is established on the Attachment 1, which displays a column showing the agreed amount that remains owed to each Retiree after payment of the "Prorata Portion". Each Retiree shall have a judgment against the City for his or her Fixed Remaining Arrearage Amount, which shall not accrue interest and shall not be collected in any manner other than the manner set forth in this Agreement.

7.    **Approval by U.S. Bankruptcy Court:**  Every Retiree who enters into this Agreement irrevocably agrees that, if this Agreement is approved by the  Circuit Court, and if the City shall file a Bankruptcy Petition within one (1) year of the Settlement Date and shall thereafter present a U. S. Bankruptcy Court with a Plan of Adjustment which is no less favorable to the Retirees, and which is materially consistent with the terms of this Agreement, (Plan), then each said Retiree binds himself or herself to consent to and vote for the Plan and to cooperate in obtaining its approval or confirmation by the U.S. Bankruptcy Court. If a Plan is not approved or confirmed by the U.S. Bankruptcy Court, each Retiree individually agrees that the terms and conditions of this Agreement shall govern payments to said Retiree. By signing this Agreement, each Retiree agrees to vote in favor of the Plan that is no less favorable to the Retirees, and which is  in substantial compliance with the material terms of this Agreement. Further, the Retirees authorize the Retirees' Counsel to take such steps and actions as are appropriate to ensure the confirmation of the Plan and to vote on behalf of the Retiree in favor of such Plan. For all purposes involving the voting in bankruptcy court concerning any Plan of Adjustment, Retiree appoints Retirees' Counsel as his or her agent, attorney-in-fact, and proxy to cast such vote on behalf of said Retiree. Further, by executing this Agreement or otherwise agreeing to be bound by it, Retirees grant an irrevocable power of attorney appointing Robert J. Hedge to act for the signing Retiree(s) for all  purposes regarding this Agreement.

8.    **Commencement of Payments to Retirees:**  If the City's pending appeal of the dismissal of its Bankruptcy Petition is reversed in favor of the City or if the City files a separate Bankruptcy Petition within one (1) year of the resolution of its appeal or within one (1) year of the Settlement Date (whichever last occurs), then, beginning on the Commencement Date, the City shall begin and shall continue to distribute Adjusted Monthly Amount for and to all living Retirees. If the City does not file a Bankruptcy Petition within one (1) year of the Settlement Date or if the City's Plan in Bankruptcy is not approved, then, beginning on the 1st day of the month next following (a) the City's failure to file a Bankruptcy Petition or (b) the final order of dismissal of the City's subsequently filed Bankruptcy Petition, whichever is the later event, the City shall begin and continue to distribute Adjusted Monthly Amount for and to all living Retirees.

9.    **Retirees' Benefit Holding Account:**  Except as otherwise specifically provided in this Agreement, all money addressed in that paragraph styled "**Adjusted**

Initials: _____

**Monthly Amount**" and all money to be used in periodic payments of Betterment Distributions under that paragraph styled "**Calculation of Monthly Payment to Retirees with Enhancement by Betterment Distribution**" shall be deposited into an account styled the "Benefit Holding Account" and paid from said account to the appropriate Retiree(s) in the manner set out by this Agreement. The deposit of such money shall be in accordance with the provisions of this Agreement. The Benefit Holding Account shall be administered by the City; provided, however, that the bank statements and all transactions shall be made available to Retirees' Counsel or his designee at all reasonable times and on five (5) business days request by said Retirees' Counsel. All money in the Benefit Holding Account shall be the property of the Retirees as a group and is held in trust by the City for the benefit of the Retirees as a group. It is specifically acknowledged that money in the Benefit Holding Account is not the property of the City.

10. **City's New Retirement Plan Structure:** Subject to a confirmation of the City's Plan or as otherwise provided in this Agreement in the event that no Plan is confirmed, the City shall operate and administer a New Retirement Plan under the following terms and provisions:

a. **Proof of Retiree's Identity, Viability and Mailing Address:** Within ten (10) days of the Commencement Date and within thirty (30) days of the beginning of each calendar year thereafter, the City shall mail to each Retiree, at their last known address, a form that each Retiree must complete, sign, and return to the City. This form will request each Retiree to certify, under oath, that said Retiree is still alive and provide Retiree's correct mailing address. In the event a Retiree has executed a Power of Attorney, then the Attorney in Fact may fill out said form, and attach to said form a copy of said power of attorney. It shall be the City's initial duty to forward said form to the Retirees before the City may stop making any payments as set forth below. This form must be returned to the City within thirty (30) days after receipt. At the request of the City's Mayor, the Mayor may send a representative to meet with and confirm that a Retiree is still alive and to verify the identity, viability and correct mailing address of said Retiree from time to time. Any Retiree failing to return said form to the City shall not be entitled to receive payments under this Agreement until such time as he or she makes written proof as required herein. The parties agree and acknowledge that in the event of a Retiree's failure to make such proof of his or her identity, viability and mailing address for a period of more than one (1) year, the funds that would otherwise be paid said Retiree will be redistributed to the remaining Retirees in subsequent distributions. The parties recognize that irreparable prejudice would be caused to the New Retirement Plan if said Retiree later claimed an entitlement to said money. Therefore, at the City's election, if a Retiree fails to make said proof for a period of one (1) year next following a written request to the last address known to the City for the Retiree to do so, then the Retiree shall be ineligible to receive payments thereafter, and his or her benefits shall be treated as if the Retiree died without a surviving spouse. Notwithstanding any other provision of this

Initials: _____

ed. 26 2011-05-12

8

subparagraph, any payments made by the City to Retiree(s) in good faith belief that the Retiree has not died shall be conclusively presumed to have been properly made by the City.

b. **Calculation of Monthly Payment to Retirees:** On or before the 10th day of each month next following the Commencement Date and continuing for the life of each individual Retiree, the City shall distribute to each remaining Retiree a payment known as the "Individual's Adjusted Monthly Amount" and calculated by the formula:

$$IAMA = \$50,000 \times (IROMA/TROMA)$$

"IAMA" is the Individual Adjusted Monthly Amount, which is the amount payable to the Individual Retiree for the particular month. "IROMA" is the Individual Retiree's Original Monthly Amount and "TROMA" is the Total Retirees' Original Monthly Amount, which is the total of all then remaining Retirees' Original Monthly Amounts. By way of example only: If Retiree No.1 was originally receiving $1,008.87 per month as his Original Monthly Amount, and the total of all then living Retirees is $142,916.56, then Retiree No. 1's IAMA is $352.96. This is obtained by the following application of the formula:

$$\$50,000 \times (\$1,008.87 / \$142,916.56) = 352.96 \text{ or}$$
$$\$50,000 \text{ times } (\$1,008.87 \text{ divided by } \$142,916.56) = 352.96$$
Each monthly payment in FY 2013 would be $352.96.

As the number of Retirees is reduced by death, the monthly payments of each Retiree's Individual Adjusted Monthly Amount shall be adjusted to re-establish the pro-rata distribution of the Adjusted Monthly Amount, to be distributed among the remaining Retirees. Adjustments for death of Retiree(s) shall happen when City receives notice of the death of a Retiree and no less that once per year before April of each year.

c. **Calculation of Betterment Distribution Payments to Retirees for Fixed Remaining Arrearage Amount:** So long as any Retiree(s) is owed a portion of the Fixed Remaining Arrearage Amount, the Betterment Distribution that is determined to exist at the end of a fiscal year shall be paid to Retirees' Counsel, who will then distribute said funds to all remaining Retirees on a pro rata basis, less attorney fees and expenses. This payment will be a single lump sum payment paid to Retirees' Counsel within thirty (30) days of the close of said fiscal year using the formula:

$$ICP = BD \times (IRAA/TRAA)$$

where (ICP) is the amount payable to the Individual Retiree, (BD) is the total Betterment Distribution being disbursed, (IRAA) is the Individual Retiree's

Initials:

ed. 26 2011-05-12

9

Remaining Arrearage Amount and (TRAA) is the total amount of all remaining Retirees' Remaining Arrearage Amount. The right of Retirees to receive payments under this subparagraph shall end when all Retirees have been paid all of the Fixed Remaining Arrearage Amount. If the total amount Betterment Distribution for a fiscal year exceeds the amount of funding needed to pay all Retirees the remaining Fixed Remaining Arrearage Amount or if all Retirees have already been paid the full Fixed Remaining Arrearage Amount, then and thereafter, the Betterment Distribution for subsequent fiscal years shall be used in the manner set out in subparagraph (l) below.

By way of example only: If Retiree No.1's Arrearage Amount was originally $19,370.30, and the total Arrearage Amount of all Retirees was $2,750,895.52 and if the Betterment Distribution for FY 2012 is $504,166.67, then Retiree No. 1's share of a this Betterment Distribution would be $3,550.07. This Betterment Distribution would then be paid within thirty (30) days of the close of FY 2012. Retiree No. 1's share of the exemplar Betterment Distribution is obtained by the following application of the formula:

$$\$504,166.67 \times (\$19,370.30 / \$2,750,895.52) = 3,550.07 \text{ or}$$
$$\$504,166.67 \text{ times } (\$19,370.30 \text{ divided by } \$2,750,895.52) = 3,550.07$$

Betterment Distributions for any specific fiscal year shall be made only to living Retirees who are alive on December 31 of the fiscal year in which the Betterment Amount was received by City. When a Retiree dies leaving a surviving spouse entitled to receive benefits, then said spouse shall be treated the same as the Retiree and shall receive the Retiree's share of Betterment Distribution(s) thereafter. If a Retiree dies with no surviving spouse entitled to receive benefits, then the amount that would have been paid to the Retiree as his or her Individual Retiree's Remaining Arrearage Amount shall be paid to the Retiree's estate.

d. **Calculation of Monthly Payment to Retirees with Enhancement by Betterment Distribution:** After all of claims for payment of the Fixed Remaining Arrearage Amount have been satisfied, any Betterment Distribution that is determined to exist at the end of a fiscal year shall be paid to all remaining Retirees on a prorata basis and in twelve (12) equal installment payments so as to supplement the Adjusted Monthly Amount of the Retirees using the formula:

$$ICP = BD \times (IRARBA/TRARBA)$$

(ICP) is the amount payable to the Individual Retiree, (BD) is the total Betterment Distribution being disbursed, (IRARBA) is the Individual Retiree's Annual Retirement Benefit Amount and (TRARBA) is the total amount of all remaining Retirees' Annual Retirement Benefit Amount. Notwithstanding any other provision of this Agreement, to the extent that any Betterment Distribution, when added to the

Initials: _____

ed. 26 2011-05-12

10

Adjusted Monthly Amount would exceed the 125% of the Original Monthly Amount that would have been paid to a Retiree, then such amount of the Betterment Distribution that exceeds 125% of the individual Original Monthly Amount shall be returned to the City.

By way of example only: If Retiree No.1 was originally receiving $1,008.87 per month as his Original Monthly Amount, and the total of all then living Retirees is $142,916.56, then Retiree No. 1's IAMA is $352.96. This calculation is set above. After all Retirees are fully paid their respective Arrearage Amount, the Betterment Distribution would flow over to increase the Adjusted Monthly Amount for all living Retirees. If the Betterment Distribution for FY 2011-2012 is $504,166.67, this would equate to a hypothetical additional $42,013.89 per month in FY 2012-2013. As such, Retiree No. 1's Adjusted Monthly Amount of $352.96 would be increased by $296.58 for a total of $649.54 per month by his share of the Betterment Distribution. This is obtained by the following application of the formula:

$504,166.67 divided by 12 = $42,013.89 per month
$42,103.89 x ($1,008.87 / $142,916.56) = $296.58 or
$42,013.89 times ($1,008.87 divided by $142,916.56) = $296.58
Each monthly payment in FY 2012-2013 would be $296.58.
This $296.58 is in addition to the $352.96; totalling $649.54 per month.
(This $296.58 is not assured for future years and the amount will likely change with following years based on the calculation of the Betterment Distribution.)

As the number of Retirees is reduced by death, the amount of each Retiree's Individual Adjusted Monthly Amount shall be adjusted as set out in the subparagraph entitled "Calculation of Monthly Payment to Retirees" and the determination of the Betterment Distribution supplement shall be determined as set out in the subparagraph entitled "Calculation of Betterment Distribution Payments to Retirees".

e.   **Annual Accounting of Payments and Retiree's Obligation to Dispute or Accept Accounting:**  Within sixty (60) days of the end of each fiscal year, the City shall send a written accounting of payments to each Retiree setting out the amount paid during the previous fiscal year.  The Retiree shall promptly examine said statement to verify its correctness and completeness.  In the event that the Retiree disputes the accuracy of said statement, he or she shall notify the City, in writing, within 31 days of the post mark date on the envelope bearing the City's statement.  If the Retiree does not make a written notification within the time permitted, he or she shall be deemed irrevocably and conclusively to accept the accuracy of the statement and shall be bound by its content.

11.   **Benefits for Surviving Spouse of Deceased Retiree:**  Except for payment of the Retiree's total Arrearage Amount, each Retiree's right to receive monthly payments

Initials: _____

under this Agreement shall end upon the death of said Retiree; provided, however, that if at the time of execution of this Agreement and continuing until the death of a Retiree, said Retiree is married, then the surviving spouse shall be entitled to receive such payments as the deceased Retiree would have received. Thereafter, and for the life of the surviving spouse, all provisions of this Agreement applicable to a "Retiree" shall apply to said surviving spouse; provided, however, that if the surviving spouse remarries, the spouse of the surviving spouse shall not acquire the status of being the "spouse of a Retiree".

12.    **Agreement Replaces Defined Benefit Plan:** This Agreement is intended to replace a defined benefit plan. Notwithstanding this intent, the parties acknowledge that neither the City, Retirees' Counsel nor any other person involved in the crafting of this Agreement has made any representation as to the tax attributes, effects, consequences or ramifications of this Agreement. Each Retiree is specifically cautioned to seek separate tax advice and/or consulting with respect to the tax consequences of this Agreement.

13.    **Notices to the City and to Retirees:** All notices to the City by any party to this Agreement shall be sent by Certified Mail to the Mayor of the City of Prichard at the then official mailing address of the City with a true copy to the Clerk of the City of Prichard sent in the same manner. All notices to any other party to this Agreement shall be deemed delivered when sent to the last known address of the recipient by first class mail of the United State Postal Service, proof of mailing.

14.    **Dismissal of Pending Lawsuit and Release of Claims:** Effective as of the Settlement Date, each and all Retirees dismiss, with prejudice, all claims against all defendants in that certain civil action styled <u>David Anders et al v. City of Prichard  et al, CV 09-901570</u>. Except for the relief provided by this Agreement, each and all of the Retirees release any further, other or different claim(s) against each and all of the defendants, including and not limited to, the City of Prichard, Alabama, Ronald K. Davis, Napolean Bracy, Herman Towner, Ossia Edwards, Troy Ephriam, Earline Martin-Harris and the City of Prichard Municipal Employees Pension and Relief Fund .

~~15.~~    (Replaced by Attachment 2). ~~Provisions for Attorney Fees:  Subject to approval of the City's  liability insurance carrier, which is not within the power of the City to assure, the following provisions are made with respect to certain attorney fees:~~

~~a.  Payment of Retiree's Bankruptcy Attorney:   In the event the City continues its present bankruptcy or files a new petition for bankruptcy within 1 year of the Settlement Date as contemplated herein and with the consent of the City's insurer, the City's insurer may pay the Retirees' bankruptcy attorney their normal and customary legal fees and expenses related to the Retirees' participation in said bankruptcy an amount up to $15,000.00.~~

Initials:

Case 09-15000    Doc 396-1    Filed 01/24/14    Entered 01/24/14 13:52:24    Desc Exhibit
A - D    Page 13 of 24

~~b. Payment of Attorney Fees Relating to Settlement of Underlying Lawsuit: Upon the Settlement Date, the City agrees to pay to Retirees' Counsel, in addition to the Arrearage Amount that is to be paid under this Agreement, $_____ as attorney fees and expenses. (If no amount is included or if the amount is not initialed by Retirees' Counsel and the Mayor, then the amount allowed is zero dollars).~~

16. **No Third-Party Beneficiaries:** The parties recognize that the City may not be able to resolve the claims of all persons. There are no intended third-party beneficiaries to this Agreement. No person who is not a party to this Agreement shall have any right as an intended or unintended third-party beneficiary or otherwise. The City shall be entitled to address matters with any non-party in the same manner as if this Agreement did not exist; except as may be provided by applicable law, including the law applicable to bankruptcy.

17. **Future Settlement With Non-Settling Retiree(s) Who Are Not Party To This Agreement On Settlement Date:** The parties recognize that some person(s) may elect not to accept this Agreement although said person(s) would have qualified as a "Retiree" under this Agreement but for the person's refusal to accept the terms of this Agreement on or before the Settlement Date. The City agrees that it will not voluntarily enter into a settlement with any Non-settling Retiree if the terms of said subsequent settlement are proportionately more favorable financially than the terms of this Agreement when compared to settling Retirees of the same or substantially the same Original Monthly Amount. If the City voluntarily enters into such a more favorable agreement with a Non-Settling Retiree, then, beginning on the date of the first payment to said Non-Settling Retiree, all then living Retirees shall prospectively receive an increase in retirement benefits that are proportionately equivalent to the terms of the settlement provided to said subsequently settling Non-Settling Retiree. This provision shall not increase or alter the City's obligation to any Retiree(s) under this Agreement if the City is ordered, over the City's objection, to pay a benefit to a Non-Settling Retiree(s) that is proportionately more favorable financially than the terms of this Agreement when compared to settling Retirees of the same or substantially the same Original Monthly Amount of retirement benefits. The City's consent to any payment to Non-Settling Retiree(s) shall not be considered "voluntary" if it is pursuant to a court order and over the City's objection; provided that the City shall not be required to exhaust any appellate remedies in support of its objection.

18. **No Impairment of Obligations under this Agreement by Future Bankruptcy Filings** To the extent permitted by law and except as otherwise provided for by this Agreement, the City hereby irrevocably agrees that the obligations to the Retirees under this Agreement, including the judgment for the "Fixed Remaining Arrearage Amount," shall never be stayed, delayed, modified, adjusted, reduced,

Initials: _____

compromised, or impaired by any future bankruptcy filings by the City, without the written consent of each Retiree affected.

19. **Failure to Perform:** After the Settlement Date, if the City materially breaches its obligations under this Agreement, the City shall be in default, and the parties agree to the following:

a. That, if the City is the debtor in a bankruptcy proceeding, then the City shall consent, within thirty (30) days of a written request from the Retirees' Counsel, to entry of an Order for Relief from Stay, so as to allow the Retiree(s) to proceed in the Circuit Court of Mobile County, Alabama with the prosecution of an action to enforce the terms of this Agreement.

b. In such event, the Circuit Court of Mobile County, Alabama, shall have sole jurisdiction and venue to adjudicate the controversy between the City and the Retiree(s) and to provide such relief as is permitted under the law of the State of Alabama and the United States of America by the full scope of legal and equitable powers available to a Court; provided, however, that all parties to such action shall have a right to equal justice under the law and no party waives any right to substantive and/or procedural rights, including the right to due process under the law, or the right to appellate review as guaranteed by the Constitutions and Laws of the State of Alabama and the United States of America.

c. If the City is not a debtor in a bankruptcy proceeding, the provisions of Paragraph b., above, shall apply.

20. **Attorney Fees In Event of Dispute:**

a. **Default by the City:** In the event the City fails or otherwise refuses to perform any obligation under this Agreement, Retirees' Counsel shall make a written demand for cure on the City and the City shall have thirty (30) days to cure the alleged default in its performance. If the City fails to cure the alleged default in its performance or to undertake, in good faith, to effectuate a cure, then Retirees' Counsel may institute an action for enforcement. In the event of such an action by Retirees' Counsel, the prevailing party, whether it be the City or the Retirees or Retirees' Counsel in his representative capacity, shall receive a reasonable attorney's fee and reasonable expenditures for litigation expenses, including the cost of deposition transcripts, expert witnesses and court costs as determined by the Court.

b. **Default by Retiree(s):** In the event Retiree(s) or Retirees' Counsel fails or otherwise refuses to perform any obligation under this Agreement, the City shall make a written demand for cure on the Retiree(s) and/or the Retirees' Counsel and said person(s) shall have thirty (30) days to cure the alleged default in his or her

Initials: _____

performance. If the Retiree(s) or Retirees' Counsel fails to cure the alleged default in his or her performance or to undertake, in good faith, to effectuate a cure, then the City may institute an action for enforcement. In the event of such an action by the City, the prevailing party, whether it be the City or the Retirees or Retirees' Counsel, shall receive a reasonable attorney's fee and reasonable expenditures for litigation expenses, including the cost of deposition transcripts, expert witnesses and court costs as determined by the Court.

21.    **Multiple Counterparts:** This Agreement may be executed in multiple counterparts and shall have the same effect as if a single agreement had been signed by all parties; providing, however, that at least one counterpart of the Agreement must bear an original signature of the Mayor of the City and must be approved in the manner set out in that paragraph styled, "**Binding Agreement**" herein.

22.    **Neutral Interpretation of Agreement:** The City has been represented by its legal counsel and the Retirees have been represented by their legal counsel in an arms-length negotiation. In the event that any future interpretation of this Agreement is made by any court or tribunal, said interpretation shall not favor either side against the other based on the drafting history of this Agreement.

23.    **Binding Agreement:**   This Agreement shall become binding on the signatory parties in the following manner:

a. **Execution by Retirees:** This Agreement shall not be binding for any person who has not signed it in his or her capacity as a Retiree of the City; _and_

b. **Sufficient Number of Retirees Accept:** This Agreement shall not be signed by the Mayor until (i) this Agreement has been signed and accepted by no fewer than ninety-six (96) Retirees who represent more than two-thirds (2/3) of the total amount of the dollar value disputed between the City and all Retirees collectively and (ii) proof of such acceptance has been made by presentation of said signed counterparts to the Mayor or his representative(s); and

c. **Execution by the City:** This Agreement shall not become binding on the City unless it is (1) executed by the Mayor on behalf of the City and (2) it is approved by the City with said approval being expressed by a Resolution of the City passed in due form and proper protocol; _and_

d. **Approval By Circuit Court:** This Agreement shall not become binding on the parties to this Agreement unless (1) a Circuit Court of Mobile County having jurisdiction over the issues involved between the parties approves the settlement of the parties' dispute and (2) enters a judgment in accordance with the terms of the Settlement Agreement.

Initials:

24. **Entire Agreement:** This Agreement constitutes the entire agreement between the parties. No oral or written statement that is not a part of this Agreement shall be deemed to have been relied on by any person or party. This Agreement may not be altered, modified or changed in any way except by a writing signed by the City and the Retirees' Counsel for the Retirees, and, in the case of the City, the alteration has been approved by the City with said approval being expressed by a Resolution of the City passed in due form and proper protocol provided, however, the Agreement may be included in a Bankruptcy Plan and approved by the United States Bankruptcy Court so long as it does not materially alter the terms thereof.

IN WITNESS WHEREOF, this document is executed by the Mayor of the City of Prichard, Alabama and by each of the participating Retirees as of the date of execution by the Mayor.

Witness:

_____
Clerk of the City

CITY OF PRICHARD, ALABAMA

BY: _____
       Ronald K. Davis, Mayor
Date: _____5-20-11_____

Witness:

_____

_____
Retiree Signature
Print Name: _____
Street Address: _____
_____
Mailing Address: _____
_____
Date: _____

Witness:

_____

THE HEDGE LAW FIRM, P.C.

BY: _____
       Robert J. Hedge, Retirees' Counsel
Date: _____

Initials: _____

ed. 26 2011-05-12

16

# ATTACHMENT 2

15. **Provisions for Attorney Fees:** Subject to approval of the City's liability insurance carrier with respect to subpart a., below, which has been granted, the following provisions are made with respect to certain attorney fees:

a. **Payment of Retirees' Bankruptcy Attorney by City's Insurer:** In the event the City continues its present bankruptcy or files a new petition for bankruptcy within 1 year of the Settlement Date as contemplated herein, the City's insurer will timely pay the Retirees' bankruptcy counsel, Silver, Voit & Thompson, Attorneys at Law, P.C., (Retirees' Bankruptcy Counsel or Firm), the Firm's normal and customary legal fees and expenses related to the Retirees' participation in said bankruptcy an amount up to $15,000.00.

b. **Payment of Retirees' Bankruptcy Attorney by the City:** The City will pay said Retirees' Bankruptcy Counsel the sum of $15,000.00 on or before January 15, 2012 and $15,000.00 on or before October 15, 2012in full satisfaction of all existing fees and expenses presently due and owed by the Retirees to said Firm.

c. **No Other Obligation:** The City's obligation to pay any portion of the attorney fees for Retirees' bankruptcy counsel are as set out in this Paragraph and the City shall have no other, further or greater obligation whatsoever.

d. **Failure to Perform:** In the event that the City fails to perform as set out herein, the Retirees' bankruptcy counsel shall have the rights and remedies available to Retirees as provided in Paragraphs 18 and 19 of the Agreement and all other rights as are available under the law.



# EXHIBIT

# B – 1

(To be Supplemented)

# EXHIBIT

# B – 2

(To be Supplemented)

# EXHIBIT

# C

South Alabama Regional Planning Commission
PO Box 1665
Mobile, Alabama 36130

Mobile County EMA
348 N. McGregor Avenue
Mobile, Alabama 36602

Mobile County Personnel Board
1809 Government Street
Mobile, Alabama 36606

Mobile County Health Department
251 North Bayou Street
Mobile, Alabama 36603

# EXHIBIT

# D

The City Council of the City of Prichard, Alabama met in a Regular Session Council Meeting on Thursday, January 23, 2014, at 5:30 p.m.

Meeting commenced at 5:30 p.m.

Roll Call:     Councilwoman Edwards present
               Councilman Griffin present
               Councilwoman Martin- Harris present
               Councilman Martin present
               Councilman McCall present


Mayor Troy Ephriam was present for the meeting.
Mayor's Staff were present for the meeting.
City Attorney Jerome Carter was present for the meeting.
Council Attorney Gregory Harris was present for the meeting.
Darlene P. Lewis served as clerk for the meeting.


Item 2

A Resolution Conveying Authority to Those Officials Previously Designates As Negotiators on Behalf of the City of Prichard to Settle Issues on the 6th Amended Plan of Adjustments in Re: City of Prichard, Alabama, Debtor, U.S. Bankruptcy Case No.: 09-15000, United States Bankruptcy Court for the Southern District of Alabama.

Motion by Councilwoman Edwards and second by Councilman Griffin to approve the authority to those
 Officials Previously Designates As Negotiators on Behalf of the City of Prichard to Settle Issues on the 6th Amended Plan of Adjustments.

| | |
|---|---|
| Councilman Martin yea | Councilwoman Edwards yea |
| Councilman Griffin yea | Councilwoman Martin-Harris |
| Councilman McCall yea | |



I **Darlene P. Lewis, City Clerk** certify this is a true and certified document held at city hall.
January 24, 2014